**2022 IL 127942**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____


(Docket Nos. 127942, 127944 cons.)

WILLIAM "WES" JOHNSON, Appellee, v. LUCAS ARMSTRONG *et al.*, Appellants.

*Opinion filed June 24, 2022.*


JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Theis, Neville, Michael J. Burke, Overstreet, and Carter concurred in the judgment and opinion.


## OPINION

¶ 1     Plaintiff suffers from severe and permanent nerve damage in his leg, which he alleges was caused by a negligently performed hip replacement surgery. He brought a claim of negligence against his surgeon expressed in two separate counts: one based on specific negligence and one based on the doctrine of *res ipsa loquitur*. He also brought a claim of negligence based on *res ipsa loquitur* against a surgical technician who participated in the surgery. Plaintiff provided only one expert witness, also a surgeon, to establish the elements of *res ipsa loquitur*. The McLean

County circuit court granted summary judgment to the surgical technician because (1) plaintiff had failed to present an expert witness to establish the standard of care for a surgical technician, (2) the control element of *res ipsa loquitur* was not met, and (3) there was no evidence of negligence on the surgical technician's part. As a result, the surgical technician was completely dismissed from the case. The circuit court subsequently granted summary judgment in favor of the surgeon on the *res ipsa loquitur* count, leaving the count of specific negligence against the surgeon remaining in the circuit court. The appellate court reversed both judgments.

¶ 2    In this case, we review whether the elements of *res ipsa loquitur* have been met and whether any additional expert testimony was required for the doctrine to apply under these facts. Initially, however, we review a jurisdictional issue related to whether a Rule 304(a) interlocutory appeal of a count of negligence based on *res ipsa loquitur* is proper where there remains a pending count of specific negligence against the same defendant in the circuit court. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 3                                    BACKGROUND

¶ 4    Dr. Lucas Armstrong, with assistance from two surgical technicians, Sarah Harden and Pamela Rolf, performed a left, total hip arthroplasty, commonly known as a hip replacement, on plaintiff, William "Wes" Johnson. After the surgery, plaintiff suffered from femoral nerve palsy. Electromyography (EMG) readings demonstrated a severe left femoral neuropathy "specific to the branches to vastus lateralis and rectus femoris muscles."

¶ 5    Plaintiff brought a professional medical negligence suit in four counts. Count I alleged specific negligence against Dr. Armstrong in that he (1) failed to identify, preserve, and protect plaintiff's femoral nerve; (2) improperly retracted plaintiff's femoral nerve or improperly directed the placement of the retractors; or (3) directly traumatized plaintiff's femoral nerve. Count II alleged that McLean County Orthopedics, Ltd. (McLean County Orthopedics), was vicariously liable for this negligence as Dr. Armstrong's employer under the doctrine of *respondeat superior*.

¶ 6    Count III alleged negligence against Dr. Armstrong, Harden, and Rolf based on the doctrine of *res ipsa loquitur* in that (1) the injury to his femoral nerve occurred

"while the retractors, scalpel, electrocautery device and other surgical instruments were under the control of ARMSTRONG, HARDEN and ROLF" and (2) that, in the ordinary course of events, plaintiff's injury "would not have occurred if ARMSTRONG, HARDEN, and ROLF had used a reasonable standard of professional care while the retractors, scalpel, electrocautery device and other surgical instruments were under their control." Count IV alleged that Advocate Health and Hospitals Corporation, doing business as Advocate BroMenn Medical Center (Advocate BroMenn), was vicariously liable for this negligence as the employer of Harden and Rolf under the doctrine of *respondeat superior*.

¶ 7        Dr. Armstrong, Harden, and Rolf were all deposed and generally testified to the following. 2021 IL App (4th) 210038, ¶¶ 12-21. Dr. Armstrong was the only one authorized to position and move any instrument in contact with plaintiff's body, and Dr. Armstrong was the only one to have done so. As the "first scrub," Rolf's primary function was to hand surgical instruments and material to Dr. Armstrong. As the "second scrub," Harden's function was to do whatever Dr. Armstrong told her to do. That included holding certain instruments, such as a retractor, while the instrument was in contract with the plaintiff's body. As she said, "I don't use anything—I hold things," and, "I hold what I'm told to hold—whatever the doctor tells me to do, I do." Rolf also indicated that the second scrub might handle other instruments apart from a retractor, such as a Kocher clamp, and would be responsible for suction. In light of the above, Rolf was voluntarily dismissed without prejudice.

¶ 8        Plaintiff presented a single expert witness, Dr. Sonny Bal. Dr. Bal testified that he had performed hundreds of hip replacement surgeries using the same method that Dr. Armstrong had used. Dr. Bal testified that nerve palsies are a recognized complication of hip replacement surgery and that the fact of a femoral nerve injury does not indicate, *per se*, a breach in the standard of care. Dr. Bal specifically testified, however, that *this* plaintiff's injury is of a type that does not normally occur in the absence of negligence. Dr. Bal believed that the injury was most likely caused by the improper use of a retractor. Despite this belief, he testified that, according to the surgical records, Dr. Armstrong did not deviate from the standard of care in making the incision and management of the retractor. Dr. Bal did not purport to offer any standard of care for Harden. He did, however, testify that, from

all the surgical records, it appeared that Harden did only as instructed by Dr. Armstrong throughout the procedure.

¶ 9        Harden and Advocate BroMenn moved for summary judgment on the *res ipsa loquitur* and *respondeat superior* counts. The circuit court granted the motion at a hearing on October 30, 2020, on the grounds that (1) no qualified expert had established the standard of care for Harden, (2) there was no evidence of negligence on the part of Harden, and (3) Harden did not control the retractor for purposes of *res ipsa loquitur*. After the court orally rendered this judgment, defense counsel requested permission to submit a written order to reflect the court's ruling. The court agreed. The record sheet reflects the following: "Defendant Advocate and Harden's Motion for Summary Judgment argued and granted. Request for Rule 304(a) finding granted. [Defense counsel] to submit written order."

¶ 10       On December 15, 2020, the circuit court granted Dr. Armstrong's oral motion for summary judgment on the *res ipsa loquitur* count. No record of this proceeding appears in the record. The record sheet reflects the following:

"Defendant Armstrong's oral Motion for Summary Judgment as to Count III (res ipsa loquitur) granted over objection. Pursuant to Supreme Court Rule 304(a), the court finds there is no just reason for delaying appeal as to the res ipsa loquitur counts. Remaining counts of negligence against Defendant Armstrong and McLean County Orthopedics stayed, pending appeal of the res ipsa loquitur and discovery issues. Counsel to submit written orders."

¶ 11       On December 22, 2020, the circuit court filed a written order entering summary judgment in Dr. Armstrong's favor and found no just reason for delaying enforcement or appeal of that order pursuant to Rule 304(a). The court stayed any pending litigation on the remaining counts against Armstrong and McLean County Orthopedics (counts I and II) "pending resolution of the issues going up on appeal." The record sheet reflects: "Order re: Defendant Armstrong['s] Motion for Summary Judgment entered. See Order."

¶ 12       On January 5, 2021, the circuit court filed a written order granting summary judgment in favor of Harden and Advocate BroMenn finding no just reason for delaying the appeal of its order pursuant to Rule 304(a). The record sheet reflects:

"Order re: Advocate and Harden's Motion for Summary Judgment entered. See Order."

¶ 13 Plaintiff filed a notice of appeal on January 6, 2021, pursuant to Rule 304(a), seeking to appeal both the December 22, 2020, order and the January 5, 2021, order entering summary judgment for defendants on the *res ipsa loquitur* counts.

¶ 14 The appellate court reversed, holding that *res ipsa loquitur* applied against both Dr. Armstrong and Harden. In doing so, the court held that Harden had control over the retractor. The court further held that no additional expert testimony was needed to establish Harden's standard of care, saying: "In essence, the *control* element of the *res ipsa* doctrine is sufficient to establish a duty of care." (Emphasis in original.) 2021 IL App (4th) 210038, ¶ 68. In so holding, the court declined to follow its own decision in *Taylor v. City of Beardstown*, 142 Ill. App. 3d 584 (1986). 2021 IL App (4th) 210038, ¶ 69.

¶ 15 Harden, Advocate BroMenn, and Dr. Armstrong appealed to this court pursuant to Rule 315 in two separate cases raising distinct yet related issues. Those petitions were allowed and consolidated by this court. Ill. S. Ct. R. 315 (eff. Oct. 1, 2021). We also allowed the Illinois Trial Lawyers Association to file an *amicus curiae* brief. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 16                                ANALYSIS

¶ 17                                Jurisdiction

¶ 18 Before proceeding to the merits, this court has an independent duty to ensure that jurisdiction is proper, regardless of whether the parties have raised any jurisdictional challenge. *Vasquez Gonzalez v. Union Health Service, Inc.*, 2018 IL 123025, ¶ 8 (citing *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 349 (2002)).

¶ 19 Article VI, section 6, of the Illinois Constitution of 1970 confers upon the appellate court jurisdiction to hear appeals from final judgments entered in the circuit court. Ill. Const. 1970, art. VI, § 6. It also grants this court the power to "provide by rule for appeals to the Appellate Court from other than final judgments of Circuit Courts." *Id.* " 'Accordingly, absent a supreme court rule, the appellate

- 5 -

court is without jurisdiction to review judgments, orders, or decrees that are not final.' " *Armstead v. National Freight, Inc.*, 2021 IL 126730, ¶ 20 (quoting *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 22).

¶ 20 Here, both orders for summary judgment were brought to the appellate court pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Rule 304(a) provides that "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." *Id.* "By its terms, Rule 304(a) applies only to final judgments or orders." *Blumenthal*, 2016 IL 118781, ¶ 24. "The special finding contemplated by the rule will make a final order appealable, but it can have no effect on a nonfinal order." *Id.* "If the order is in fact not final, inclusion of the special finding in the trial court's order cannot confer appellate jurisdiction." *Id.* Both orders included the Rule 304(a) finding language; thus, the question becomes whether each order constitutes a final judgment.

¶ 21 "[T]o be considered final and appealable for purposes of Rule 304(a), a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court only has to proceed with execution of the judgment." *Id.* ¶ 25. Although the order need not dispose of all claims presented by the pleadings, "it must be final in the sense that it disposes of the rights of the parties, either upon the entire controversy or upon some definite and separate part thereof." *Id.* "Where an order disposes only of certain issues relating to the same basic claim, such a ruling is not subject to review under Rule 304(a)." *Armstead*, 2021 IL 126730, ¶ 24 (citing *In re Marriage of Leopando*, 96 Ill. 2d 114, 119-20 (1983)).

¶ 22 In *Armstead*, we reiterated the distinction between orders that dispose of separate, unrelated claims—which are appealable pursuant to Rule 304(a)—and orders that dispose only of separate issues relating to the same claim—which are not. *Id.* ¶ 25. In that case, we determined that the order appealed from disposed only of an issue: whether plaintiff was precluded from asserting certain injuries as part of his negligence case. Because that order only resolved one issue related to the surviving negligence claim, that order was not appealable under Rule 304(a). *Id.* ¶¶ 27-29.

¶ 23    Here, the order granting summary judgment to Harden and Advocate BroMenn is final as to them because it terminates the litigation as to them. The order granting summary judgment to Dr. Armstrong, however, is not a final judgment because *res ipsa loquitur* is not a claim in and of itself; rather, it is an evidentiary doctrine that allows a plaintiff to prove negligence under a unique set of proofs. *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007); *Imig v. Beck*, 115 Ill. 2d 18, 26-27 (1986). Although plaintiff expressed his negligence claim against Dr. Armstrong in two counts, these are but alternative theories for proving Dr. Armstrong's liability for negligence. The fact that plaintiffs in Illinois are required to specifically plead *res ipsa loquitur* does not itself transform this evidentiary doctrine into a stand-alone claim. Our appellate court has dismissed appeals on these very grounds. *Russell v. Good Shepherd Hospital*, 222 Ill. App. 3d 140, 144-45 (1991) ("where a party states one claim alternatively in several counts, the dismissal of fewer than all such counts is not a final judgment as to fewer than all of the party's *claims* as required by Supreme Court Rule 304(a)" (emphasis in original), and *res ipsa loquitur* is " 'a rule of evidence and not a separate theory of recovery' " (quoting *Prado*, 72 Ill. App. 3d at 625)).

¶ 24    Thus, the operative effect of the summary judgment in favor of Dr. Armstrong is to preclude plaintiff from proving that Dr. Armstrong was negligent under the unique proofs of *res ipsa loquitur*, but plaintiff's claim for negligence against Dr. Armstrong remains outstanding. Consequently, the order granting summary judgment to Dr. Armstrong was not a final judgment, and the appellate court lacked jurisdiction under Rule 304(a) to review that order. The appeal of that order is dismissed, and those portions of the appellate opinion addressing that order are vacated.

¶ 25                    Effect of Dismissal of Dr. Armstrong

¶ 26    We observe that the dismissal of Dr. Armstrong leaves this case in a curious position. Although summary judgment in favor of Harden was orally pronounced in October 2020, the order granting that summary judgment was filed, and therefore became final, in January 2021. See Ill. S. Ct. R. 272 (eff. Jan. 1, 2018) ("If at the time of announcing final judgment the judge requires the submission of a form of written judgment to be signed by the judge ***, the clerk shall make a notation to

that effect and the judgment becomes final only when the signed judgment is filed."); *Williams v. BNSF Ry. Co.*, 2015 IL 117444, ¶ 37 (explaining the conditions under which a circuit court's oral ruling may constitute an entry of judgment). However, Dr. Armstrong was dismissed from the *res ipsa loquitur* count in December 2020.

¶ 27 What we are left with, then, is a negligence claim based on *res ipsa loquitur* against Harden alone. The question arises, can the unique proofs of *res ipsa loquitur*, which generally require exclusive control on the part of those against whom the proofs are being applied, be applied solely to Harden in a situation such as this where she was exercising joint control? *Drewick v. Interstate Terminals, Inc.*, 42 Ill. 2d 345, 348 (1969) ("The purpose of [the control element] is, of course, to limit the application of the doctrine to those cases where the negligence, if any, must reasonably have been that of the defendant."); Prosser and Keeton on the Law of Torts § 39, at 248 (W. Page Keeton *et al.* eds., 5th ed. 1984) ("The injury must either be traced to a specific instrumentality or cause for which the defendant was responsible, or it must be shown that the plaintiff was responsible for all reasonably probable causes to which the accident could be attributed."); Restatement (Second) of Torts § 328D cmt. g (1965) (by establishing exclusive control by defendant, "the responsibility of the defendant is proved by eliminating that of any other person"). Plaintiff himself essentially argued in the circuit and appellate courts that *res ipsa loquitur* could only be applied here if both Harden and Dr. Armstrong were included within its proofs. Consequently, the point in time at which we analyze the summary judgment in favor of Harden—whether as the case stood in October 2020 or January 2021—will affect the outcome.

¶ 28 After due consideration, we believe that the use of our supervisory authority is warranted in this case to review summary judgment as the case stood in October 2020. "Our supervisory authority extends to 'the adjudication and application of law and the procedural administration of the courts.' " *City of Urbana v. Andrew N.B.*, 211 Ill. 2d 456, 470 (2004) (quoting *Kunkel v. Walton*, 179 Ill. 2d 519, 528 (1997)). "Even when a circuit court's ruling does not satisfy the normal finality requirements, this court may elect to exercise its supervisory authority to intercede." *Vasquez Gonzalez*, 2018 IL 123025, ¶ 16 (citing *People v. Heddins*, 66 Ill. 2d 404, 406-07 (1977) (dismissing the appeal but entering a supervisory order to direct the circuit court to vacate a clearly erroneous interlocutory order)).

¶ 29       Per the normal appellate process, we would review whether summary judgment in favor of Harden was proper at a time when Dr. Armstrong had been dismissed from the *res ipsa loquitur* proofs. In doing so, we would have to determine whether *res ipsa loquitur* can be applied to Harden in the absence of Dr. Armstrong. This is an issue that has not been raised, briefed, or argued before this court, and although plaintiff raised arguments related to this issue below, neither of the courts below appear to have squarely addressed this question. Were we to find that *res ipsa loquitur* could not be applied to Harden without including Dr. Armstrong, plaintiff would be precluded from obtaining meaningful relief. Furthermore, the only reason this conundrum is presented is because the written order for summary judgment in favor of Harden was delayed for months after its oral pronouncement, while the written order in Dr. Armstrong's favor was filed days after its oral pronouncement. Accordingly, in the exercise of our supervisory authority we will review the summary judgment in favor of Harden as of the date it was pronounced.

¶ 30                                    Summary Judgment

¶ 31       We now turn to the order granting summary judgment to Harden and Advocate BroMenn. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2018). "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Monson v. City of Danville*, 2018 IL 122486, ¶ 12. When examining whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 22. Summary judgment is a drastic means of disposing of litigation and "should be allowed only when the right of the moving party is clear and free from doubt." (Internal quotation marks omitted.) *Id.* A circuit court's entry of summary judgment is reviewed *de novo*. *Id.*

*Res Ipsa Loquitur*

¶ 33    We described the nature and purpose of *res ipsa loquitur*, "the thing speaks for itself," in *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-49 (1965):

> "When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citations.] This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant."

¶ 34    If *res ipsa loquitur* applies, the factfinder is permitted to infer negligence from a set of facts that "speaks for itself." *Imig*, 115 Ill. 2d at 26-27. The defendant may then offer evidence tending to disprove negligence, but the inference of negligence does not simply vanish or disappear when contrary evidence appears. *Id.* at 26-28. Rather, the inference arising from *res ipsa loquitur*, along with the evidence provided by the defendant, is weighed by the factfinder. *Id.* at 27. "The inference may be strong, requiring substantial proof to overcome it, or it may be weak, requiring little or no evidence to refute it." *Id.* In the end, the trier of fact is free to accept or reject the inference.

¶ 35    For *res ipsa loquitur* to apply, the plaintiff must plead and prove that he was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence (the probability element) (2) by an agency or instrumentality within the defendant's exclusive control (the control element). *Heastie*, 226 Ill. 2d at 531-32; *Gatlin v. Ruder*, 137 Ill. 2d 284, 296-97 (1990). Whether *res ipsa loquitur* applies is a question of law to be decided in the first instance by the trial court. *Imig*, 115 Ill. 2d at 27; 735 ILCS 5/2-1113 (West 2020). "In making that determination, the court shall rely upon either the common knowledge of laymen, if it determines that to be adequate, or upon expert medical testimony, that the medical result complained of would not have ordinarily occurred in the absence of negligence on the part of the defendant." 735 ILCS 5/2-1113 (West 2020). "Proof of an unusual, unexpected or untoward medical result which ordinarily does not occur in the

absence of negligence will suffice in the application of the doctrine." *Id.*

¶ 36                             *Res Ipsa Loquitur*—Probability

¶ 37     We first examine whether plaintiff has presented sufficient evidence to survive a motion for summary judgment on the first element: that the severe and permanent nerve damage suffered here is an injury that ordinarily does not happen in the absence of negligence.

¶ 38     Given that severe femoral neuropathy specific to the branches of vastus lateralis and rectus femoris muscles, presenting after a total hip arthroplasty, is of a type that is outside the common knowledge of laymen, expert testimony was required to determine whether such an injury would ordinarily occur absent negligence. Unequivocal testimony to this effect will directly establish plaintiff's initial burden on the probability component of *res ipsa loquitur*, although it will not constitute proof that the injury would never happen without negligence. *Spidle v. Steward*, 79 Ill. 2d 1, 8-9 (1980) (directed verdict against *res ipsa loquitur* counts improper where expert gave equivocal testimony in response to question on probability because that testimony, when considered with the entire record, established the probability element).

¶ 39     Here, plaintiff presented sufficient evidence to satisfy the probability element. Plaintiff presented Dr. Bal, a retired orthopedic surgeon, who testified that he had performed between 100 and 200 total hip arthroplasty procedures per year on average. Dr. Bal confirmed that he most commonly used the anterior approach, which was the same approach used by Dr. Armstrong here. Dr. Bal testified that, as a general proposition, nerve palsies are a recognized complication of hip replacement surgery. He also testified that the mere fact of a nerve injury does not establish a breach in the standard of care. In fact, Dr. Bal had two patients, in the entirety of his career, who developed femoral nerve palsies after a hip replacement surgery. One was caused by bleeding, which put pressure on the nerve, and the other had an unknown cause. He agreed that the cause of femoral nerve palsies is often unknown. However, he specifically distinguished between different forms of femoral nerve neuropathies:

- 11 -

"There are two distinct types of femoral nerve neuropathies, and I want to make sure we're clear on the distinction.

Transient femoral neuropathy injury, neuropraxia palsy, as referred to in this paper *** occurs in the absence of negligence. It is transient; it has a good prognosis; strength returns, and the patient goes on with a temporary time period during which there is a deficit that improves rapidly, and those are what I've encountered in my practice. That palsy can occur and does occur in the absence of negligence from a variety of factors.

My testimony here is a complete injury to the femoral nerve, as occurred here, verified by repeat EMG and subsequent treatment by a nerve specialist like Dr. Tung, does not occur absent negligence."

¶ 40    Dr. Bal supported this unequivocal testimony with repeated reference to his experience, his review of the literature, and the postoperative EMG readings. From all this, plaintiff established that nerve damage like the kind he suffered does not ordinarily occur after a hip replacement surgery absent negligence. Consequently, the first element of *res ipsa loquitur* was satisfied for purposes of summary judgment.

¶ 41    *Res Ipsa Loquitur*—Control

¶ 42    The second element of *res ipsa loquitur* is that the plaintiff was injured by an agency or instrumentality within the defendant's exclusive control. As we said in *Heastie*, "some authorities speak of 'management and control' rather than 'exclusive control,' but the terms have come to be viewed as interchangeable." *Heastie*, 226 Ill. 2d at 532. Regardless, "the requisite control is not a rigid standard, but a flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Id.* Indeed, the word "control" may itself be misleading, as the fact of a defendant's literal control over the occurrence may be nonexistent, yet the defendant may nevertheless be responsible for the occurrence. Restatement (Second) of Torts § 328D cmt. g (1965) ("The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against."); Prosser and Keeton on the

Law of Torts § 39, at 250-51 (W. Page Keeton *et al.* eds., 5th ed. 1984) (suggesting that it "would be far better, and much confusion would be avoided, if the rigid 'control' test were discarded altogether, and we were to require instead that the apparent negligent cause of the accident be such that the defendant would more likely than not be responsible for it").

¶ 43    Generally speaking, the plaintiff must identify the instrumentality of his injury, as well as everyone who was in control of that instrumentality. However,

> "while reliance on the *res ipsa* doctrine may normally require that the injury can be traced to a specific cause for which the defendant is responsible, Illinois law also authorizes use of the doctrine where it can be shown that the defendant was responsible for all reasonable causes to which the accident could be attributed." *Heastie*, 226 Ill. 2d at 538 (citing *Napoli v. Hinsdale Hospital*, 213 Ill. App. 3d 382, 388 (1991), and Prosser and Keeton on the Law of Torts § 39, at 248 (W. Page Keeton *et al.* eds., 5th ed. 1984)).

"Similarly, Illinois law does not require a plaintiff to show the actual force which initiated the motion or set the instrumentality in operation in order to rely on the *res ipsa* doctrine." *Id.* at 539. "To the contrary, if the specific and actual force which initiated the motion or set the instrumentality in operation were known unequivocally, leaving no reason for inference that some other unknown negligent act or force was responsible, the *res ipsa* doctrine could not even be invoked." *Id.*

¶ 44    As for identifying the defendant or defendants, "plaintiff is not required to show that his injuries were more likely caused by any particular one of the defendants in order to proceed with his *res ipsa* claim, nor must he eliminate all causes of his injuries other than the negligence of one or more of the defendants." *Id.* at 534 (citing *Collins v. Superior Air-Ground Ambulance Service, Inc.*, 338 Ill. App. 3d 812, 822-23 (2003)). However, in a multiple-defendant situation, the plaintiff must ensure that all defendants who could have been at fault are included. See *Smith v. Eli Lilly & Co.*, 137 Ill. 2d 222, 257 (1990) ("In *res ipsa loquitur* and alternative liability situations, all parties who could have been the cause of the plaintiff's injuries are joined as defendants.").

¶ 45    Here, plaintiff was committed to the care of, and subjected to surgery by, Dr. Armstrong and Harden. Consequently, plaintiff is not required to identify the

precise instrumentality that caused his nerve damage—the fact that he was under defendants' care during surgery sufficiently establishes, for purposes of *res ipsa loquitur*, that whatever caused plaintiff's nerve damage during the surgery was under defendants' control. *Kolakowski v. Voris*, 83 Ill. 2d 388, 396 (1980) ("a plaintiff's only recourse is to rely on the doctrine of *res ipsa loquitur*" where he is placed in the care and custody of defendants during surgery); *id.* (" 'The control, at one time or another, of one or more of the various agencies or instrumentalities which might have harmed the plaintiff was in the hands of every defendant or of his employees or temporary servants. This, we think, places upon them the burden of initial explanation.' " (quoting *Ybarra v. Spangard*, 154 P.2d 687, 689-90 (Cal. 1944))). Likewise, plaintiff is not required under these circumstances to identify precisely who caused his nerve damage. What plaintiff must establish here is that all parties who were responsible for all reasonable causes of plaintiff's nerve damage are identified. Plaintiff has done so, and consequently, the control element is met.

¶ 46   Harden (joined in her arguments by Advocate BroMenn) argues that the control element has not been met as to her. She specifically identifies the instrumentality of injury in this case to be the retractor, and she argues that she did not control the retractor because her only function was to hold it in place. She points to Dr. Bal, who confirmed that Dr. Armstrong was the only one authorized to place or move the retractor during surgery and that the surgical technician's only retractor-related job is to hold it in place.

¶ 47   There are two problems with this argument. First, this argument is predicated upon the mistaken belief that plaintiff must identify the instrumentality of his injury in order to raise *res ipsa loquitur*. As we have already explained, while this is generally true, it is not true where, as here, plaintiff can show that defendants were responsible for all reasonable causes to which the injury could be attributed. It also rests on the mistaken belief that plaintiff has expressly identified the retractor as *the* instrumentality of his injury. On the contrary, plaintiff's argument, supported by the evidence, is that he underwent surgery and suffered a severe and permanent injury. The instrumentality of his injury remains unknown and unidentified in his *res ipsa loquitur* count. In that count, plaintiff alleged that his injuries occurred "while the retractors, scalpel, electrocautery device and other surgical instruments were under the control of ARMSTRONG, HARDEN, and ROLF." Indeed, there is

evidence supporting the allegation that other instruments, apart from the retractor, were handled by Harden during the procedure.

¶ 48    The second problem with this argument is more basic. The control element is a "flexible one in which the key question is whether the probable cause of the plaintiff's injury was one which the defendant was under a duty to the plaintiff to anticipate or guard against." *Heastie*, 226 Ill. 2d at 532. Assuming that the retractor was, in fact, the instrumentality of the injury, Harden was literally holding it while it was inside plaintiff's body. Control, whether joint or individual, by Harden over the retractor could not be any clearer. It is of no consequence that Harden had no independent authority to place or move the retractor because she had independent capability of doing so. If she did move or mismanage the retractor while she was only supposed to be holding it still, then she would or could have been the negligent party at fault.

¶ 49                                    Standard of Care

¶ 50    Harden argues that, because plaintiff here did not present competent testimony as to the standard of care for a surgical technician, summary judgment in her favor was proper. Harden relies on *Taylor*, 142 Ill. App. 3d 584, for the proposition that a standard of care is required in addition to, or in order to satisfy, the elements of *res ipsa loquitur* in a medical professional negligence case; and she relies on *Sullivan v. Edward Hospital*, 209 Ill. 2d 100 (2004), for the proposition that a surgeon is not competent to testify as to the standard of care for a surgical technician. Plaintiff takes the opposite position.

¶ 51    A brief comparison of negligence and *res ipsa loquitur* principles is warranted. "The elements of a negligence cause of action are a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach." *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 294 (2000) (citing *Cunis v. Brennan*, 56 Ill. 2d 372, 374 (1974)). "The standard of care, also known as the standard of conduct, falls within the duty element." *Id.*; Prosser and Keeton on the Law of Torts § 30, at 164 (W. Page Keeton *et al.* eds., 5th ed. 1984) (describing the duty element as: "A duty, or obligation, recognized by the law, requiring the person to conform to a certain standard of conduct, for the protection of others against

- 15 -

unreasonable risks."). Thus, in every cause of action for negligence, the plaintiff must establish that a duty exists and must also identify what the duty is.

¶ 52    The standard of care in a medical professional negligence case is to act as would an " ' "ordinarily careful professional." ' " *Jones*, 191 Ill. 2d at 295 (quoting *Advincula v. United Blood Services*, 176 Ill. 2d 1, 23 (1996), quoting *Cunis*, 56 Ill. 2d at 376). We have consistently held that the burden of establishing the standard of care—that is, what an ordinarily careful professional would do—in a medical professional negligence case is on the plaintiff. *Sullivan*, 209 Ill. 2d at 112 (citing *Purtill v. Hess*, 111 Ill. 2d 229, 241-42 (1986)). Generally speaking, expert testimony is required to establish what an ordinarily careful professional would do in a given situation "because jurors are not skilled in the practice of medicine and would find it difficult without the help of medical evidence to determine any lack of necessary scientific skill on the part of the physician." *Walski v. Tiesenga*, 72 Ill. 2d 249, 256 (1978). However, where defendant's conduct is so grossly negligent or the treatment so common that a layman could readily appraise it, no expert testimony is necessary. *Id.*

¶ 53    Once the standard of care is established in a negligence cause of action, the plaintiff "must then prove that, judged in the light of these standards, the doctor was unskillful or negligent and that his want of skill or care caused the injury to the plaintiff." *Id.* Again, expert testimony is generally required to establish that the defendant physician deviated from the standard of care unless the common understanding exception applies. *Jones*, 191 Ill. 2d at 295. In other words, the plaintiff must show, usually with expert testimony, a breach of the defendant's duty. Finally, the plaintiff must prove that he was injured and that the injury was proximately caused by the defendant's breach of duty.

¶ 54    At this point, it is important to note that the word "negligence" is often used interchangeably throughout the law to mean either (1) the cause of action/theory of liability comprising all of the elements above or (2) the breach of a duty. *E.g.*, *Jahn v. Troy Fire Protection District*, 163 Ill. 2d 275, 280 (1994) ("Negligence is defined as the failure to use such care as a reasonably prudent and careful person would use under similar circumstances. Black's Law Dictionary 1032 (6th ed. 1990)."); Restatement (Second) of Torts § 282 (1965) ("negligence is conduct which falls below the standard established by law for the protection of others against

unreasonable risk of harm"); Restatement (Second) of Torts § 282 cmt. b (1965) ("negligent conduct subjects the actor to liability only if the [elements of a negligence cause of action] exist").

¶ 55    *Res ipsa loquitur* ("the thing speaks for itself"), on the other hand, is not an alternate theory of liability in Illinois—the theory of liability remains "negligence" in the first sense of the word—rather, it is a species of circumstantial evidence that allows the trier of fact to draw an inference of "negligence" in the second sense of the word. *Heastie*, 226 Ill. 2d at 542; *Imig*, 115 Ill. 2d at 25-26. This is evident because the two elements of *res ipsa loquitur* (probability and control) are not sufficient in and of themselves to prove a negligence cause of action. For instance, the existence of a duty must be proved apart from the two elements of *res ipsa loquitur*. *Spidle*, 79 Ill. 2d at 7 (*res ipsa loquitur* "will not apply unless a duty of care is owed by the defendant to the plaintiff"). Likewise, the causation element must still be proven apart from the *res ipsa loquitur* elements. *Edgar County Bank & Trust Co. v. Paris Hospital, Inc.*, 57 Ill. 2d 298, 304 (1974), *overruled on other grounds by Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993). We have explained that "the application of the doctrine of *res ipsa loquitur* does not affect the necessity or manner of proof of proximate cause and that it is relevant only to the nature of the proof from which the trier of fact may draw an inference of negligence." *Id.*

¶ 56    Thus, by saying that *res ipsa loquitur* "is relevant only to the nature of the proof from which the trier of fact may draw an inference of negligence," we mean that the application of *res ipsa loquitur* relates to the nature of proof required to show a breach of duty. Restatement (Second) of Torts § 328D (1965) (under *res ipsa loquitur*, "[i]t may be inferred that harm suffered by the plaintiff is caused by negligence," where negligence is defined in section 282 (*id.* § 282) as "conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm"). The issue in this case may therefore be reframed as whether the standard of care portion of the duty element of negligence has been satisfied where the two elements of *res ipsa loquitur* have been satisfied.

¶ 57    The reason that the standard of care is necessary in a regular professional negligence cause of action is because there must be a standard by which to judge the performance of the defendant physician. *Purtill*, 111 Ill. 2d at 241-42; *Walski*,

72 Ill. 2d at 255-56. Without a standard of care by which to judge the physician, there would be no way to determine whether any deviation or breach has occurred. Thus, in cases of specific negligence, where the plaintiff has alleged some specific course of conduct on the part of the defendant that breached the defendant's duty, it must be shown what each defendant's standard of care was in relation to that course of conduct.

¶ 58        In this case, however, the precise course of individual conduct that led to plaintiff's injury is unknown. All plaintiff knows is that he was injured while under the care of multiple defendants. Plaintiff cannot establish an individual standard of care for either Dr. Armstrong or Harden that is independent of the injury itself because he does not know what individual standard Dr. Armstrong or Harden has deviated from. But by establishing that his injury is one that ordinarily does not occur absent negligence and that all of the instrumentalities that could have caused the injury were in the control of the defendant, plaintiff has provided the legally applicable standard of care from which negligence may be found: that under normal circumstances, a hip replacement does not result in severe and permanent nerve damage. Consequently, no additional testimony related to Harden's standard of care was necessary here. We need not go further to determine which of the two *res ipsa loquitur* elements, taken alone, might satisfy the standard of care requirement because both elements are satisfied here.

¶ 59        In coming to this conclusion, we agree with the appellate court's decision not to follow *Taylor*, 142 Ill. App. 3d 584. 2021 IL App (4th) 210038, ¶ 69. Although we agree with the judgment of *Taylor*, we do not approve of its reasoning. We also agree with the appellate court here that *Taylor* is an outlier in its explicit pronouncement regarding the requirement of establishing a standard of care. *Id.* Given this, we believe discussion of defendant's argument based on *Sullivan* to be unnecessary.

¶ 60                                Other Arguments

¶ 61        Harden makes two final arguments. First, she argues that, because plaintiff has suggested and/or provided evidence that the instrumentality of the injury was the retractor, plaintiff is barred from relying on *res ipsa loquitur*. She relies on the principle that, "if the specific and actual force which initiated the motion or set the

- 18 -

instrumentality in operation were known unequivocally, leaving no reason for inference that some other unknown negligent act or force was responsible, the *res ipsa* doctrine could not even be invoked." *Heastie*, 226 Ill. 2d at 539.

¶ 62    As we explained in *Kolakowski*, 83 Ill. 2d at 397, this "would be accurate if the evidence introduced by plaintiff conclusively established the exact cause of his injuries." But where plaintiff's expert merely opines upon some cause of the injury, rather than conclusively establishes it, the opinion is " 'opinion only.' " *Id.* (quoting *Clifford-Jacobs Forging Co. v. Industrial Comm'n*, 19 Ill. 2d 236, 243 (1960)). We reaffirmed this principle from *Kolakowski* in *Gatlin*, 137 Ill. 2d at 298-99. Here, Dr. Bal's testimony did not conclusively establish that the retractor caused plaintiff's nerve damage. Rather, it was his "opinion only" as to what caused the nerve damage. Therefore, plaintiff is not barred from raising *res ipsa loquitur* merely because his expert has an opinion on the most likely cause of his injury.

¶ 63    Lastly, Harden argues that there is no evidence in this case that she deviated from any standard of care in any way. The evidence to which she refers is the testimony of each defendant, the defendants' surgical records, and the testimony of Dr. Bal, all of which attest to the fact that Harden acted appropriately. Of course, the most important bit of evidence in a *res ipsa loquitur* case is the injury or occurrence itself. The fact of plaintiff's severe and permanent nerve damage is itself evidence of negligence given that the elements of *res ipsa loquitur* are satisfied. The situation wherein there is no other evidence of negligence, apart from the injury, is precisely the type of situation for which *res ipsa loquitur* is designed.

¶ 64                                     CONCLUSION

¶ 65    The appellate court lacked jurisdiction under Rule 304(a) to hear the appeal from the December 22, 2020, order granting summary judgment to Dr. Armstrong because that order disposed of an issue rather than a claim. The appeal from that interlocutory order is therefore dismissed, and those portions of the appellate opinion addressing that order are vacated.

¶ 66    We exercise our supervisory authority to review the summary judgment in favor of Harden and Advocate BroMenn as it was pronounced in October 2020 and conclude that it was granted in error because the elements of *res ipsa loquitur* were

met at that time, and because no further expert testimony on the standard of care was required. We therefore affirm the appellate court's judgment reversing the circuit court's January 6, 2021, order, and we remand the case to the circuit court. Given that the summary judgment in favor of Dr. Armstrong was pronounced after Harden had been orally dismissed from the *res ipsa loquitur* count, we also direct the circuit court to reconsider the December 22, 2020, order granting summary judgment in light of this opinion.

¶ 67       No. 127944, Appeal dismissed.

¶ 68       No. 127942, Appellate court judgment affirmed in part and vacated in part.

¶ 69       Circuit court judgment reversed.

¶ 70       Remanded with directions.