2025 IL App (1st) 232407-U

SIXTH DIVISION

September 12, 2025

No. 1-23-2407

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| TED E. C. BULTHAUP III, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 19 L 4480 |
| | ) | |
| MICHAEL J. YOUNG and THE LAW OFFICE OF | ) | Honorable |
| MICHAEL J. YOUNG, | ) | Christ Stanley Stacey |
| | ) | Judge, presiding. |
| Defendants-Appellees. | ) | |

_____

PRESIDING JUSTICE C.A. WALKER delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

## ORDER

¶ 1    *Held:*    We affirm the circuit court's grant of summary judgment because appellant's claim is barred by the statute of limitations.

¶ 2    Appellant Ted. E. C. Bulthaup appeals from the circuit court's grant of summary judgment in favor of appellees, attorney Michael J. Young and his law office, from claims arising from Young's representation of Bulthaup in a criminal case. The court found that Bulthaup's claims for professional negligence and breach of fiduciary duty were barred by the actual innocence rule of legal malpractice claims and the statute of limitations, respectively. We affirm.

¶ 3                                    BACKGROUND

¶ 4    Bulthaup filed his complaint on April 26, 2019 (which he later amended), alleging in relevant part that Young engaged in a scheme with the office of the Illinois Attorney General (AG) to secure Bulthaup's guilty plea in exchange for the release of a $25,000 bail bond to Young as attorney's fees. In the underlying criminal case, Bulthaup alleged the "State of Illinois brought charges for unreported sales tax" in 2014 arising from Bulthaup's conduct in running his businesses, Hollywood Blvd Cinema and Hollywood Palms Cinema.

¶ 5    Bulthaup's allegations were organized into two causes of action, (1) legal malpractice, and (2) breach of fiduciary duty. Bulthaup's lone alleged theory for recovery based on intentional misconduct was "Young's violation of his fiduciary duty to Bulthaup by betraying his Client at the plea stage of the criminal proceedings, with the motive of securing $25,000 held by the State for himself in a corrupt bargain." Bulthaup alleged that at an early proceeding in the case, he overheard the AG offer to release the bond to Young in exchange for a guilty plea. Young assured Bulthaup he had not accepted. The AG was also allegedly attempting to coerce Bulthaup to plea by threatening to charge his wife. Bulthaup and Young agreed to a strategy in which they would only pretend to agree to a plea deal with the AG, then present evidence of the State's improper coercion in procuring the plea to the circuit court at the July 6, 2016 plea hearing. The plea also involved the AG not charging Bulthaup's wife.

¶ 6    During the hearing, however, Young did not follow the plan and instead "interjected purposefully to cause a false and unintended guilty plea to be accepted by the Judge in order to have the $25,000 bail bond be released to himself, all to the detriment of his own client and in promotion of his own self-interest." Specifically, Bulthaup alleged that the court asked, "Has anybody forced you, threatened you, or promised you something to get you to plead guilty," the prompt for Bulthaup to reveal the AG's coercion, but instead "Young interrupted, saying, 'May I interject? Just what was stated previously on the record, [a reference to the AGs agreement not to charge Bulthaup's wife] other than that,' " and did not elaborate. Bulthaup wanted to explain that he was coerced to the Judge, and even "started to say yes" to the question of whether he was coerced in open court, but Young convinced Bulthaup to enter the plea. After the court accepted the plea, Young then told Bulthaup he could have the plea vacated at any time for "judicial error."

¶ 7    The complaint continues that "While Young failed to have the $25,000 released to him prior to the plea, at the completion of the sentencing hearing the following November ***, the corrupt bargain was indeed consummated. Young then walked out of that courtroom to release those funds directly to himself." Bulthaup further alleged that Young did not sufficiently represent him in preparing and filing the motion to reconsider sentence, titling the section "Post-Sentence Breach of Fiduciary Duties." Despite the title, Bulthaup did not allege intentional conduct in this section.

¶ 8    The record shows that sentencing occurred on November 10, 2016, and the circuit court then denied the motion to reconsider sentence on April 28, 2017.

¶ 9    As to timing of his complaint, Bulthaup alleged that he was transferred to a work release center on June 16, 2017, where he was granted "passes" after two months, allowing him to visit a friend and start asking questions that led to the realization that "Young's conduct was more than just unethical, sloppy and subject to an ARDC complaint, but *** constituted actual malpractice."

3

¶ 10    In his answer, Young claimed that at the sentencing hearing, he received the $25,000 bond "pursuant to the Court asking [Bulthaup] if he wanted the bond refund to go to his attorney for payment of his services and [Bulthaup] said, 'Yes,' while nodding his head in the affirmative." Young also filed counterclaims against Bulthaup, including count I for breach of contract.

¶ 11    Young moved to dismiss Bulthaup's complaint, arguing in relevant part that it was untimely per the two-year statute of limitations for legal malpractice claims under 735 ILCS 5/13-214.3(b) (West 2014). In the motion, Young stated that Bulthaup was initially charged with 112 felony counts, with the AG agreeing to dismiss 110 counts in exchange for a guilty plea to one count of financial institution fraud (count VI, Pub. Act 96-1551, Art. 5, § 5-5, (eff. July 1, 2011) (adding 720 ILCS 5/17-10.6)), for which Bulthaup received a four-year prison sentence, and one count of sales tax evasion (count I, Pub. Act 97-1074, § 20, (eff. Jan. 1, 2013) (amending 35 ILCS 120/13(b))), for which he received a five-year prison sentence, with the sentences running concurrently. Young attached the motion to reconsider sentence to his motion, in which Bulthaup requested only probation, not to vacate the conviction. The circuit court denied Young's motion to dismiss, finding the statute had not yet expired when Bulthaup filed on April 26, 2019, because "In cases where an attorney's ongoing representation causes the injury, the accrual does not start until the representation ends. See [*Taylor v. Board of Education*], 2014 IL App (1st) 123744, ¶ 46. Here, Bulthaup's injury became concrete at the earliest when the trial judge denied the motion to reconsider and Young ended his representation on April 28, 2017."

¶ 12    During discovery, Bulthaup responded to an interrogatory reading "Identify the date that you realized that you should not have been placed in the Illinois Department of Corrections," with, "I had never really expected to be placed with IDOC so the first date I realized it was the first date I was told, November 10th, 2016. You [apparently referring to Young] had originally said you

would have the judgment vacated if I wasn't given probation." Bulthaup responded to an interrogatory asking him to "identify the date that you learned that [Young] obtained the bond refund" with "I was very off balance after November 10, I believe I learned—realized sometime the following week after the Sheriff manacled me and took me away, and I don't even specifically know how I know that." In response to another interrogatory, requesting, "Identify the date you realized that you should have not pled guilty to the DuPage charges under 14CF 002165," Bulthaup responded,

> "I was first very concerned on July 6th, 2016 when you 'interjected' without showing the Judge the letter from [the assistant AG] to my wife, and the notice *** that she sent to both you and I. This was when you suddenly and unilaterally substituted a defense strategy of 'Judicial Error' claiming you had 'hoodwinked' the Judge—and this new strategy was better than the previously agreed upon strategy which was the only tactic I had given you permission to act under. *** I became even more concerned after we left the hearing room and talked in the hallway where you explained what you had just done and why. *** Then when you stated as walked out the front door that 'of course' if we did have the sentence vacated that you could probably never practice before our Judge again. That quickly changed 'to probably never be able to practice in this courthouse again,' then changing to 'maybe never even in this County.' I remember distinctly that we had just gotten outside, the sun was bright and hot—and my blood had run cold."

¶ 13    On July 27, 2023, Young moved for summary judgment,. He first argued that Bulthaup's claims based on alleged negligence in Young's representation were non-cognizable because Bulthaup failed to "plead and prove actual innocence of the underlying claims." The lone remaining, potentially viable claim was for breach of fiduciary duty. Young contended that the

two-year limitation period for that claim began to run on either July 6, 2016, when Bulthaup pled guilty, or on November 10, 2016, when he was sentenced. This would mean the two-year limitations period expired on November 10, 2018, at the latest, rendering Bulthaup's April 26, 2019 complaint untimely. In support, Young attached forms signed by Bulthaup, dated November 10, 2016, authorizing the release of the bond to Young. He also referenced Bulthaup's interrogatory responses, as repeated above in relevant part.

¶ 14    In response Bulthaup emphasized that Young's statute of limitations argument had previously been denied in the circuit court's denial of his motion to dismiss. Bulthaup also cited *Morris v. Margulis*, 307 Ill. App. 3d 1024, 1039 (1999), for the proposition that his claims could proceed without an actual innocence finding. He continued that as a lay person, he did not understand Young had engaged in actionable wrongdoing for some time following Young's representation, explaining that, "Plaintiff only became aware from hindsight long after the conclusion of Young's services that back on July 6, 2016 he had been injured by Young's betrayal," and "Bulthaup did not suspect there was a quid pro quo arrangement until after a casual lunch conversation with [Ken Sullivan, an attorney] months later" from April 28, 2017. He continued, "[e]mail evidence shows that Bulthaup only started to conduct legal research *** on May 23, 2017, and it took months longer to find sufficient evidence that Young intentionally betrayed his fiduciary duties by putting his own interests above those of his client."

¶ 15    Bulthaup attached a portion of the sentencing hearing from November 10, 2016, during which the following exchange occurred:

> Young: Your Honor, there is an issue as to bond. I'm requesting that Mr. Bulthaup's—Mr. Bulthaup is requesting that his bond be refunded to his attorney—that his bond is refunded to his attorney for services.

The Court: Is that what you want, sir?

The Defendant: (No audible response).

The Court: So ordered.

Young: Thank you.

¶ 16    Bulthaup also attached emails he received after a February 4, 2022 request pursuant to the Freedom of Information Act (FOIA) containing email exchanges between Young and the AG's office on November 5 and 7, 2016. Therein, Young asks the AG's office to confirm they would not seek the bond as restitution and had no objection to Young seeking the bond as attorney's fees, to which the AG's office responded it would not seek the bond as restitution.

¶ 17    Bulthaup also moved for summary judgment on Young's counterclaim for breach of contract.[1]

¶ 18    During oral argument on the parties' summary judgment motions, Young argued in relevant part that "none of this makes sense" because Bulthaup claimed he overheard the AG offer him the bribe but then pled guilty anyways despite knowing he was innocent. Young continued that, following sentencing on November 10, 2016, "you would think when that jail door closes, [Bulthaup] would think, wow, something bad just happened to me, I'm in jail *** and I'm innocent, and I heard about the bribe."

¶ 19    Bulthaup responded that the AG offered the bribe to Young on October 25, 2015, but Young told Bulthaup he rejected the offer, and Bulthaup believed him. He continued, "I went on [Young's] assurance on July 6th, [2016]. I went on his assurance after that because I brought the

---

[1]    The circuit court had previously dismissed Young's other counterclaims.

coercion up. He said it was all right. That last day he said, well, it goes wrong, we're going to do a motion for reconsideration first, which I never even heard about before."

¶ 20    On October 13, 2023, the circuit court entered an order that, in relevant part, (1) granted Young's motion for summary judgment, and (2) denied Bulthaup's motion for summary judgment on Young's breach of contract counterclaim. The court characterized Bulthaup's claims as based on two theories: (1) breach of fiduciary duty by Young for "making a corrupt deal with an assistant Attorney General for the release of bail bonds to Young for payment of fees," and (2) various malpractice theories claiming that "Young was lax, and his performance careless in a variety of ways." The court found Bulthaup could not pursue the latter because malpractice claims sounding in negligence against criminal attorneys require a showing of actual innocence—a showing Bulthaup did not need to make, however, regarding breach of fiduciary duty. The court granted summary judgment on the "negligence" claims, accordingly, finding it was "undisputed that his conviction remains," meaning he "cannot plead and prove his 'actual innocence.' "

¶ 21    The circuit court also granted summary judgment on the breach of fiduciary duty claim, finding it was time-barred because the statute of limitation started running on November 10, 2016, at the latest. The court explained the earlier ruling on Young's motion to dismiss, issued by a different judge, was erroneous because Illinois law does not  recognize a continuous representation theory for tolling the statute of limitations in legal malpractice cases. The court continued that the proper determination of when the clock began to run was when Bulthaup knew or reasonably should have known (1) of his injury, and (2) that the injury was wrongfully caused. Finally, the court acknowledged that the question of when a plaintiff learns of an injury is usually one of fact, but found this was an instance when the facts were undisputed and led to only one conclusion, meaning resolution on summary judgment was appropriate.

¶ 22    In explaining its conclusion that the claim was time-barred, the circuit court stated that Bulthaup both knew of his injury and that it arose from wrongful conduct by November 10, 2016, because "there can be no doubt that a prison sentence is harm," and:

> "Did [Bulthaup] know the harm was caused by wrongful conduct? As early as October 19, 2015, plaintiff knew that something troubling was afoot. Bulthaup heard the Assistant Attorney General make a wrongful and illicit offer exchanging a guilty plea for bail money."

The court then summarized Bulthaup's knowledge as of November 10, 2016, according to his complaint and interrogatory answers, as follows:

> "1. the State was willing to enter an illicit plea for bond cash deal.
>
> 2. the State had attempted to communicate the illicit plea offer to Young in secrecy.
>
> 3. the State believed it could not prove its case due to bad witnesses.
>
> 4. he told Young that he wanted to go to trial and not to plead guilty.
>
> 5. he and Young had a very specific plan at the plea hearing to get the judge to reject the plea.
>
> 6. notwithstanding Bulthaup's strong defense case and desire to go to trial, Young suddenly, unexpectedly, and unilaterally changed the plan to achieve the opposite of what Bulthaup wanted but instead achieved the result that the State wanted.
>
> 7. the alleged back up plan to the alternative plan of Young regarding "Judicial Error" presented an obvious conflict of interest between attorney and client,
>
> 8. [he] was sentenced to prison and shouldn't be.
>
> 9. the bail bond money was released directly to Young, without any objection by the State."

9

¶ 23    Bulthaup filed a motion to reconsider, which the circuit court denied on November 20, 2023. This appeal followed.

¶ 24                                JURISDICTION

¶ 25    The circuit court granted summary judgment on October 13, 2023, and denied Bulthaup's motion to reconsider on November 20, 2023. Bulthaup filed his appeal on December 15, 2023. Accordingly, this court has jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017). We note that in a minute order of February 20, 2025, this court dismissed for lack of jurisdiction Bulthaup's claim that the circuit court erred in denying his motion for summary judgment on Young's counterclaim.

¶ 26                                ANALYSIS

¶ 27    The circuit court resolved this matter by granting Young summary judgment on Bulthaup's claims. Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). The court must construe the record in the light most favorable to the non-moving party. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. Summary judgment is a "drastic" method of resolving a case and should only be granted when the moving party's right to the judgment is free of doubt. *Id.* We review a circuit court's grant of summary judgment *de novo*. *Id.*

¶ 28    The circuit court granted summary judgment in part because Bulthaup's breach of fiduciary duty claim fell outside of the two-year statute of limitations. 735 ILCS 5/13-214.3(b) (West 2014). In the legal malpractice context, the statutory clock starts running when the claimant both (1) knows or should have known they suffered an injury, and (2) knows or should have known the

10

injury was "wrongfully caused." *Zweig v. Miller*, 2020 IL App (1st) 191409, ¶ 25. This principle is called "the discovery rule." *Id.* "In most cases, the time at which a party has or should have the requisite knowledge under the discovery rule is a question of fact," but summary judgment based on the statute of limitations is appropriate where the facts are undisputed and allow for only one conclusion. *Hermansen v. Riebandt*, 2020 IL App (1st) 191735, ¶ 76.

¶ 29 Before discussing the statute of limitations issue, we note that the circuit court limited the alleged dates from which the clock could begin to run by finding that all but one of Bulthaup's theories for liability sounded in negligence and thus were non-cognizable because Bulthaup failed to establish his actual innocence. See *Fink v. Banks*, 2013 IL App (1st) 122177, ¶¶ 19-21, 26 (actual innocence showing is required to maintain legal malpractice claim based on criminal conviction). The breach of fiduciary duty claim, however, involved allegations of willful and intentional misconduct, a claim which the court found was not subject to the actual innocence requirement, per *Morris*.

¶ 30 The circuit court accurately characterized both the law and Bulthaup's pleading on this issue. Bulthaup's only ground for intentional misconduct is Young's alleged acceptance of the bail bond as a bribe in exchange for Bulthaup's guilty plea. All other issues raised in the complaint stem from Young's alleged failures in communication and legal strategy, and do not involve any allegations of intentional conduct, meaning Bulthaup could not pursue them without a showing of actual innocence. *Id.* ¶¶ 20-22. Bulthaup does not dispute that he made no such showing.

¶ 31 With Bulthaup's claims thus narrowed to the single theory for breach of fiduciary duty, we must consider whether the record conclusively demonstrates that Bulthaup knew or reasonably should have known both that he was injured, and that the injury resulted from Young's

wrongdoing, at any point before April 26, 2017, the date two years before Bulthaup filed his complaint on April 26, 2019.

¶ 32    We find the relevant facts are undisputed and lead only to the conclusion that Bulthaup actually knew of both his injury, and that it occurred due to Young's alleged wrongdoing, by November 10, 2016. Accordingly, the two-year statute of limitations expired on November 10, 2018, making the April 26, 2019 claim untimely.

¶ 33    As to the first element of the discovery rule, Bulthaup was sentenced to prison on November 10, 2016, finalizing his conviction. Accepting his premise that he did not want to plead guilty and only did so due to Young's breach of fiduciary duty, there is no dispute that Bulthaup gained actual knowledge that he suffered an injury on this date, as he was present in the courtroom when the judge announced his sentence, and was then physically transported to prison.

¶ 34    The record is equally as clear regarding the second element, when Bulthaup knew or should have known his injury was due to Young's alleged wrongful conduct. Bulthaup alleges he overheard the bribe offer in October 2015, long before he suffered the injury. Accepting Young then denied his intention to take the bribe, the facts as Bulthaup alleges are that Young betrayed Bulthaup, and their plot to inform the circuit court of the AG's coercive tactics instead of pleading guilty, by unilaterally entering Bulthaup's guilty plea at the July 2016 hearing. Then, on November 10, 2016, Young permitted the sentencing hearing to go forward without attempting to vacate the plea (as Bulthaup alleged he promised to do pre-hearing) and concluded by moving in open court to be granted the bail bond, which the court granted when neither the AG, nor Bulthaup, opposed the request. In other words, as of November 10, 2016, Bulthaup knew Young had accepted the bail bond in exchange for a guilty plea Bulthaup did not wish to enter, and pursuant to which he was now incarcerated, the exact terms of the scheme Bulthaup learned of in 2015. Interpreting these

facts in the light most favorable to Bulthaup, there is still only one conclusion—he had actual knowledge that the harm of his prison sentence was due to the wrongful conduct of Young accepting a bribe by November 10, 2016.

¶ 35    This actual knowledge dooms Bulthaup's attempt to argue his status as a layperson impacted his ability to discover his claim. It is true that a client typically will not be charged with knowledge of their attorney's legal malpractice as it occurs. See *Lamet v. Levin*, 2015 IL App (1st) 143105, ¶ 28 (a layperson is "presumptively unable to discern malpractice as it occurs"). But given the facts as Bulthaup presented in his complaint and interrogatory responses, he knew of Young's wrongdoing the moment Young accepted the bail bond. The record lends itself to no other reasonable conclusion, and, as such, summary judgment based on the statute of limitations was appropriate. *Hermansen*, 2020 IL App (1st) 191735, ¶ 76.

¶ 36    Bulthaup points to the emails he received pursuant to a February 2022 FOIA request as evidence that he could not have discovered his claim until the two years preceding April 26, 2019. This argument fails because the emails, even given the interpretation Bulthaup ascribes to them, do not contain any new information beyond that which Bulthaup alleges he knew in October 2015—the AG would agree to Young accepting the bond. Moreover, the emails do not contain any information about concealing any arrangement, and—most importantly—they do not detail anything that did not occur in front of Bulthaup in open court at the November 10, 2016 sentencing hearing.

¶ 37    Next, Bulthaup argues that the circuit court here erred by reversing the previous circuit court judge's ruling that the claim was not time-barred. The second circuit court judge described the first judge's ruling as contrary to law because the first judge applied a "continuous litigation" theory for when the claim accrued, citing *Taylor*, 2014 IL App (1st) 123744. We find the second judge

accurately altered the first judge's decision, as Illinois law does not recognize a continuous representation rule in the legal malpractice context. See *Sorenson v. Law Offices of Theodore Poelhmann*, 327 Ill. App. 3d 706, 710 (2002) (citing *Witt v. Jones & Jones Law Offices, P.C.*, 269 Ill. App. 3d 540, 544 (1995)). In so finding, we note a successor judge has the authority to reconsider the ruling of a prior judge, derived from the traditional power of a court to amend and revise interlocutory orders. *Towns v. Yellow Cab Co.*, 73 Ill. 2d 113, 119 (1978). Interlocutory orders may be modified or vacated at any time. *Richichi v. City of Chicago*, 49 Ill. App. 2d 320, 325 (1964) (A judge has the right to review and reconsider a prior judge's order "if in his judgment it was erroneous and he had the duty to do so if changed facts or circumstances make the prior order unjust"). The denial of a motion for to dismiss is an interlocutory order that may be revised prior to a final judgment. *Brandon v. Bonell*, 368 Ill. App. 3d 492, 502 (2006). Accordingly, the second judge acted within his power to correct the misstep of the first and accurately apply Illinois law.

¶ 38    Bulthaup further contends that the proper date to start the clock was April 28, 2017, because the circuit court denied the motion to reconsider sentence on that date. This argument fails because under Illinois law, his injury did not occur on the denial of the motion to reconsider, but on the date of sentencing, notwithstanding any potential that the sentence could be modified on reconsideration. See *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 86-87 (1995) (motion to reconsider does not toll statute of limitations). This fact also defeats Bulthaup's argument regarding the adverse judgment rule—the operative adverse judgment occurred on November 10, 2016. See *Zweig*, 2020 IL App (1st) 191409, ¶ 30. Additionally, to the extent Bulthaup argues his counsel's alleged assurance that the plea could be vacated at the motion for reconsideration was erroneous advice, any claim based on that advice sounds in negligence, and is

precluded by Bulthaup's failure to establish his actual innocence claim. *Fink*, 2013 IL App (1st) 122177, ¶¶ 19-21, 26.

¶ 39   Moreover, the record conclusively rebuts that any of Young's alleged conduct prevented Bulthaup from discovering his claim until the motion for reconsideration was denied. Bulthaup's argument is essentially that he could not have known he was injured because the length or nature of his sentence might be altered on reconsideration. This latter scenario would do nothing to change the fact that he had actual knowledge he had suffered some injury at the time of sentencing, which starts the clock in Illinois. See *Hermitage*, 166 Ill. 2d at 86-87. Nor would it change the fact that the motion itself did not seek to vacate the plea, meaning some injury would have persisted regardless of its outcome.

¶ 40   Finally, Bulthaup argues that the five-year fraudulent concealment statute of limitations should apply to save his claim. See *Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 36 ("Under the fraudulent concealment doctrine, the statute of limitations will be tolled if the plaintiff pleads and proves that fraud prevented discovery of the cause of action."). This argument fails because there was no concealment, fraudulent or otherwise, in this case; per his complaint and interrogatory responses, the acts Bulthaup claims constituted the breach of fiduciary duty were performed in front of him. Again, if Bulthaup was contending that he had no idea Young was offered the bond as a bribe until he filed the FOIA request, this analysis might be different, but that is not the record in this case.

¶ 41                                            CONCLUSION

¶ 42   Bulthaup failed to show actual innocence, foreclosing his ability to pursue legal malpractice based on negligence. The record further shows that, regarding his breach of fiduciary duty claim, Bulthaup had actual knowledge of both his injury, and that it was wrongfully caused, by November

10, 2016. The two-year statute of limitations therefore expired on November 10, 2018, making his April 26, 2019 claim untimely. Accordingly, we affirm the circuit court's resolution of this matter on summary judgment.

¶ 43    Affirmed.