(No. 76119.—

THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Appellee, v. HERITAGE STANDARD BANK AND TRUST COMPANY, as Trustee Under Trust Agreement Dated February 3, 1986, and known as Trust No. 10165, *et al.*, Appellants.

*Opinion filed November 23, 1994.—Rehearing denied January 30, 1995.*

Leo N. Cinquino, Sandra L. Hebenstreit and Celeste P. Cinquino, of Righeimer, Martin & Cinquino, P.C., of Chicago, for appellants.

Stephen D. Helm, Special Assistant Attorney General, of Oswego, and David W. Krula, of Naperville, both of Helm & Day (Frank M. Howard, of Downers Grove, of counsel), for appellee.

JUSTICE HARRISON delivered the opinion of the court:

The Illinois State Toll Highway Authority (the Highway Authority) brought this quick-take condemnation action under the Eminent Domain Act (Ill. Rev. Stat. 1987, ch. 110, par. 7—101 *et seq.*) to acquire approximately 30.5 acres of a 132-acre parcel for use in the North-South Tollway project, to obtain some temporary easements, and to ascertain damages to the remainder. The circuit court made a preliminary finding of just compensation in the amount of $2,486,500 (Ill. Rev. Stat. 1987, ch. 110, par. 7—104), and that sum was paid to the landowners after title to the 30.5 acres was vested in the Highway Authority. Ill. Rev. Stat. 1987, ch. 110, pars. 7—105, 7—106.

The matter proceeded to trial in December of 1991. At the outset of the proceedings, the parties agreed to set the value of the temporary easements at $20,000, removing that issue from the jury's consideration. The jury subsequently determined that the landowners were entitled to compensation of only $650,750 for the prop-

erty taken and nothing for damages to the remainder. Upon the jury's report, the circuit court entered an order setting forth the amount of compensation so finally ascertained, plus the $20,000 stipulated easement valuation, and directing the landowners to refund the excess of $1,815,750 to the Highway Authority. (Ill. Rev. Stat. 1987, ch. 110, par. 7—123(b).) This order was entered on January 17, 1992.

When the landowners failed to make the required refund within the time specified by the circuit court, the court entered judgment on April 20, 1992, in favor of the Highway Authority for the amount of the unpaid excess. (Ill. Rev. Stat. 1987, ch. 110, par. 7—109.) The court also awarded the Highway Authority interest on the unpaid excess at the rate of 9% per year, commencing April 20.

Both the Highway Authority and the landowners filed post-trial motions, which were denied. The landowners then appealed, and the Highway Authority cross-appealed. The appellate court subsequently affirmed (250 Ill. App. 3d 665), and we granted the landowners' petition for leave to appeal (145 Ill. 2d R. 315).

On this appeal, the landowners claim that they should be granted a new jury trial on the issue of just compensation because the circuit court made a number of erroneous evidentiary rulings. In particular, the landowners claim that the trial court committed reversible error when it denied their first and second motions *in limine*. One of these motions sought to bar the Highway Authority from mentioning to the jury that Gallagher & Henry, one of the landowners, and Robert Gallagher owned other property in the area and were involved in certain zoning changes there. As grounds for this motion, the landowners contended that such references would serve only to focus attention on Gallagher's wealth, thereby prejudicing the jury against the landowners' case.

The other disputed motion *in limine* sought to bar the Highway Authority from presenting testimony regarding the sale of a parcel of land known as the Citicorp property, which the Highway Authority relied on heavily in placing a value on the property taken from the landowners. According to the landowners, this sale was inadmissible because it did not occur until after this condemnation proceeding was commenced, and the Highway Authority failed to show that it was not affected by the tollway project.

Although the appellate court rejected the landowners' arguments on the merits, our review does not require that we reexamine that court's reasoning. Regardless of whether the appellate court's analysis was sound, its conclusion was correct. Admission of the disputed evidence cannot serve as the basis for a new trial. This is so because the issue of whether the evidence should have been excluded has been waived.

The landowners' only challenge to evidence concerning the Citicorp property or to the mention of the Gallagher name came in their motions *in limine*. In civil cases such as this, the law is well established that the denial of a motion *in limine* does not preserve an objection to disputed evidence later introduced at trial. The moving party remains obligated to object contemporaneously when the evidence is offered at trial. (See *Cunningham v. Millers General Insurance Co.* (1992), 227 Ill. App. 3d 201, 206.) While there is not always a need to repeat the objection each time similar evidence is presented following denial of the motion *in limine,* one must nonetheless object the first time the evidence is introduced. (See *Carlson v. City Construction Co.* (1992), 239 Ill. App. 3d 211, 241.) Absent the requisite objection, the right to raise the issue on appeal is waived. See *Chubb/Home Insurance Cos. v. Outboard Marine Corp.* (1992), 238 Ill. App. 3d 558, 569.

In this case, the landowners not only failed to make contemporaneous objections regarding evidence of the Citicorp sale or mention of Gallagher's land holdings, they actually injected these matters into the trial themselves after electing to put on their case in chief before the Highway Authority proceeded with its case. The first mention of Gallagher & Henry was made by the landowners' lawyer in his opening argument, and the first evidence of the Citicorp sale was presented by the landowners through the testimony of James Dunn, one of their appraisal witnesses.

The landowners' decision to address the Citicorp sale may have been motivated by a desire to blunt the impact of that evidence before the Highway Authority had a chance to present it as part of its case. Their reasoning with respect to Gallagher is more difficult to understand. The repeated mention of Gallagher & Henry during the landowners' case often seemed to serve no purpose other than to emphasize the extent of the company's activity in the area, the very thing the motion *in limine* was supposedly intended to prevent. In any case, having opted to proceed in this way, the landowners will not now be heard to complain that presentation of these matters to the jury rendered its verdict fatally infirm. (See *Chubb/Home Insurance Cos.*, 238 Ill. App. 3d at 568; *Reid v. Sledge* (1992), 224 Ill. App. 3d 817, 822.) Erroneous or not, denial of the landowners' first and second motions *in limine* is not grounds for a new trial.

In addition to the motions *in limine*, the landowners also challenge two evidentiary rulings made by the circuit court in connection with the testimony of Fred Barofsky, one of the experts called by the Highway Authority regarding valuation of the subject property. Barofsky, the first witness to testify on the Highway Authority's behalf, opined that the highest and best use of the property was for single-family residences, with

limited, ancillary commercial development (*e.g.,* a convenience store) to assist the site's development and marketability.

Barofsky further testified that after completion of the tollway, the remainder would consist of two separate parcels of approximately 50 acres each, one on the east side and one on the west side. In Barofsky's opinion, the highest and best use for the east-side property would remain single-family residences, while the highest and best use for the remainder on the west side would be "mostly one story office and research facilities" with "potentially some commercial."

In concluding that the west-side remainder would be best used for an office and research development, Barofsky took into account, among other things, the comprehensive land use plan adopted in 1985 by the Village of Woodridge, where the property was located. According to Barofsky,

> "The official land use map, as well as the official statement adopted by the Village of Woodridge in 1985, which is also consistent with the official statements of Du Page County, both recommended that this area be some sort of office research development."

Because the landowners had gotten the Village to rezone the property for residential development in 1986, office and research use would require the west-side remainder to be rezoned again. In Barofsky's opinion, there was a reasonable probability that this could be accomplished.

In challenging this conclusion, the landowners pointed out that documentation generated in the course of the 1986 rezoning proceedings indicated that the change to residential use conformed to the spirit and intent of the Village's comprehensive plan. While this suggested a shift in the Village's position, Barofsky explained that such was not the case. The only thing different was the assumptions it used. Woodridge's 1985 land use map specifically took into account that the

tollway would be constructed on the property separating the east and west remainders. When the landowners sought the rezoning in 1986, however, they requested that municipal officials proceed on the assumption that the tollway project would not, in fact, be constructed. Barofsky based this assertion on the minutes of the zoning board hearing, portions of which he was allowed to relate to the jury over the landowners' objection.

Now that the tollway project was in fact going forward, Barofsky believed that the Village would act in accordance with its 1985 plan. He noted that the Village had permitted the rezoning of a similar site for office or research use in 1987. He also testified, over objection, that a company named Homart, which develops or assists in developing shopping centers for Sears, had been interested in acquiring a 90-acre parcel nearby, although the deal was terminated. In addition, he related that K mart was proceeding with its own development along the tollway route and had obtained the necessary rezoning from the Village of Woodridge.

On this appeal, the landowners contend that the circuit court should not have allowed Barofsky to testify about either the contents of the minutes of the 1986 zoning board meeting or Homart's terminated development deal. This contention is not meritorious. As with the landowners' motions *in limine*, we agree with the appellate court's conclusion that these matters are not grounds for a new trial.

The testimony challenged here pertained to Barofsky's opinion regarding the value of the property. The law of this State is well established that the improper admission or exclusion of value evidence does not constitute reversible error when there are other witnesses and evidence as to value on both sides and the jury has the opportunity of viewing the property and weighing the conflicting evidence. *Trustees of Schools of Township*

*Number 36 v. La Salle National Bank* (1961), 21 Ill. 2d 552, 557; see *People ex rel. Department of Transportation v. Birger* (1987), 155 Ill. App. 3d 130, 138.

Such was the case here. The jury had the opportunity to view the property, and, as the appellate court discussed, each side in this dispute presented substantial amounts of evidence regarding the property's highest and best use and its value. Barofsky was but one of numerous valuation witnesses, and the matters challenged here represented only a limited part of his testimony. Given the extent to which the record was developed in this case, the landowners' contention that admission of the disputed testimony materially prejudiced their case is wholly unpersuasive. Accordingly, whether admission of that testimony was proper or not is of no consequence. The jury's verdict should not be disturbed.

The final issue before us concerns when the landowners' obligation to pay interest on the excess compensation, *i.e.*, the $1,815,750 they were ordered to repay following the trial, should begin to accrue. The appellate court upheld the circuit court's conclusion that the operative date was April 20, 1992, when judgment was entered in favor of the Highway Authority pursuant to section 7—109 of the Eminent Domain Act (Ill. Rev. Stat. 1987, ch. 110, par. 7—109) for the amount of the excess. The Highway Authority argues, however, that interest should actually have begun to accrue on January 17, 1992, when the court entered its order, upon the jury's report, setting forth the amount of compensation finally ascertained and directing the landowners to repay the excess they had withdrawn. (See Ill. Rev. Stat. 1987, ch. 110, par. 7—123(b).) Under our recent decision in *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.* (1993), 157 Ill. 2d 282, the Highway Authority is correct.

For the foregoing reasons, the judgment of the circuit court is hereby modified to provide that the award of interest to the Highway Authority began to accrue on January 17, 1992, rather than April 20, 1992. Subject to this modification, the judgments of the circuit and appellate courts are affirmed.

*Affirmed as modified.*