2024 IL App (4th) 230742

NO. 4-23-0742

FILED
May 16, 2024
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| GLEN ROWSEY, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Winnebago County |
| IGAL BREITMAN, M.D., Individually and as Agent of | ) | No. 17L319 |
| Rockford Health Physicians, an Illinois Not-for-Profit | ) | |
| Corporation, and ROCKFORD HEALTH PHYSICIANS, | ) | Honorable |
| an Illinois Not-for-Profit Corporation, | ) | Lisa Renae Fabiano, |
|     Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justices Steigmann and Lannerd concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff, Glen Rowsey, brought a medical malpractice action against defendants—Dr. Igal Breitman, individually and as agent of Rockford Health Physicians (Rockford Health), an Illinois not-for-profit corporation, and Rockford Health—alleging he was injured as a result of surgical procedures that were negligently performed by Dr. Breitman. In December 2022, a jury returned a verdict in favor of defendants. Plaintiff filed a posttrial motion, challenging trial court rulings that he alleged improperly (1) barred him from introducing certain medical bills into evidence, (2) barred testimony from his medical expert, (3) allowed defendants' medical expert to provide speculative and uncorroborated testimony, (4) allowed defendants to inquire into how and from where he retained his medical expert, (5) rejected jury instructions and verdict forms that set forth emotional distress as a separate and distinct element of damage from pain and suffering, and

(6) limited his use of the *res ipsa loquitur* doctrine. Plaintiff also requested that the court enter an *additur* in the amount of the medical bills he alleged were improperly barred at trial. The court denied plaintiff's posttrial motion, and he appeals, raising the same issues as set forth in his motion. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3            On March 29, 2016, plaintiff underwent surgery for gastric band removal and diaphragmatic hernia repair. The surgery was performed by Dr. Breitman, an employee of Rockford Health, at Rockford Memorial Hospital. Following surgery, plaintiff experienced internal bleeding that necessitated further medical treatment, including two additional surgeries performed by Dr. Breitman the same day, one of which involved the removal of plaintiff's spleen. In April 2016, plaintiff was rehospitalized and received medical treatment for pulmonary embolisms and deep vein thrombosis.

¶ 4            In October 2017, plaintiff filed a medical negligence complaint against defendants, alleging his initial March 2016 surgical procedure was performed in a manner inconsistent with accepted standards and practices and caused him "extreme and severe injury." Plaintiff asserted defendants' actions caused "bleeding of the spleen," which they failed to control. He also alleged the bleeding required additional surgeries, including an emergency splenectomy, multiple blood transfusions, and an extensive hospital stay. According to plaintiff, defendants' negligence further resulted in his development of pulmonary embolisms, deep vein thrombosis, and resultant medical treatment associated with those conditions.

¶ 5            Both plaintiff and defendants filed various pretrial motions for the trial court's consideration. Relevant to this appeal, the record shows the court denied motions *in limine* filed by plaintiff to (1) bar certain opinion testimony from defendants' medical expert on the basis that

it was speculative and lacked factual support and (2) prevent defendants from inquiring at trial "about how and from where" plaintiff retained his medical expert. Pursuant to pretrial motions filed by defendants, the court (1) barred plaintiff from introducing certain medical bills into evidence, (2) barred certain opinions of plaintiff's medical expert regarding plaintiff's "increased risk of future harm," (3) barred emotional distress as a separate line item of damages in jury instructions and on verdict forms, and (4) limited plaintiff's use of the *res ipsa loquitur* doctrine.

¶ 6        From November 30 to December 6, 2022, a jury trial was conducted in the matter. Evidence showed that in March 2016, plaintiff sought medical treatment from Dr. Breitman regarding a "lap-band removal" and hiatal hernia repair. On March 29, 2016, Dr. Breitman performed both procedures on plaintiff laparoscopically. Dr. Breitman testified that to complete the hiatal hernia repair, he had to "separate the spleen from the stomach" to reach certain blood vessels. He stated that "fat *** called omentum" was adhered to the surface of plaintiff's spleen and "peeled off from the spleen" as he was exposing the area where he needed to work. When separating the stomach and the spleen, Dr. Breitman noticed two areas of "decapsulation," or "abrasions," on the spleen that were bleeding. He applied "Surgicel," a substance used to create blood clots, to stop the bleeding. After completing the hernia repair, Dr. Breitman reexamined the decapsulations and observed that there was "still some oozing of blood from those areas." He "applied other coagulative until the bleeding stopped." Once he observed no sign of ongoing bleeding, he "closed" plaintiff's laparoscopy incisions, and plaintiff was taken to the hospital's recovery area.

¶ 7        In recovery, medical staff observed that plaintiff was hypotensive, meaning his blood pressure was below normal. Dr. Breitman determined plaintiff's condition was caused by bleeding. Plaintiff was "resuscitate[d]" by being given a blood transfusion and returned to the

operating room, where Dr. Breitman performed a second surgery, using an "open incision," and observed "massive bleeding coming from [plaintiff's] spleen." He elected to remove plaintiff's spleen, stating a "patient cannot stay with very low blood pressure for a long time" and that he did not "have the luxury of time to" determine what area of the spleen the blood was coming from. Dr. Breitman performed a splenectomy and tied off the vessels that supplied blood to the spleen, including the splenic artery.

¶ 8        After Dr. Breitman "closed" plaintiff's incision, he noticed blood in a "drain" that had been left at the surgical site to monitor for further bleeding. He immediately "reopened the same incision *** to control whatever was going on." Dr. Breitman observed bleeding that was coming from the splenic artery and a small blood vessel on the omentum. Dr. Breitman stated he retied the splenic artery and closed the "tiny bleeder on the omentum." Following that third surgery, plaintiff received another blood transfusion and remained hospitalized for a few days.

¶ 9        A couple weeks later, on April 16, 2016, plaintiff had trouble breathing and sought emergency medical treatment at Swedish American Hospital in Rockford. Ultimately, he was hospitalized and received treatment for pulmonary embolisms, *i.e.*, blood clots in the lungs, and deep vein thrombosis. Plaintiff was later transferred to Rockford Memorial Hospital for treatment and was prescribed blood thinners.

¶ 10       At trial, plaintiff's medical expert, Dr. Aaron Chevinsky—who was board certified in both general surgery and surgical critical care—testified Dr. Breitman's treatment of plaintiff did not comply with the relevant standard of care. He opined that, although Dr. Breitman observed no additional signs of bleeding after addressing the two areas of decapsulation on plaintiff's spleen during the first surgery, plaintiff had continued to bleed. According to Dr. Chevinsky, based on the presence of the two areas of decapsulation, the requisite standard of care required Dr. Breitman

to perform an open procedure on plaintiff to examine his abdominal cavity, look at his spleen, and exclude additional bleeding.

¶ 11    Dr. Chevinsky asserted that, because the first surgery was performed laparoscopically with the use of cameras and remote instruments, Dr. Breitman would have had only a "limited view of the area of the spleen." In his opinion, the situation necessitated a more thorough examination of the spleen by way of an "open laparotomy incision." He further testified as follows:

> "[I]n the operating room, [Dr. Breitman's] options were to fully evaluate the spleen which would in my opinion require an open procedure. Had you discovered bleeding from the spleen, you would then make a decision if it could be controlled or whether a splenectomy would be necessary at that time, which in my opinion probably would have been required. And at that point the patient would have gone on and recovered uneventfully."

¶ 12    Dr. Chevinsky also opined that plaintiff's need for a third surgery indicated his splenic artery "wasn't handled properly" at the time of the second surgery "and led to bleeding." Additionally, he testified that risks associated with plaintiff's major abdominal explorations included the development of pulmonary embolisms and deep vein thrombosis. He acknowledged that plaintiff had other risk factors associated with those conditions, including "undergoing surgery, being over age 60, [and] being obese." However, having major abdominal surgery with hemorrhage puts a person "at much higher risk." On cross-examination, Dr. Chevinsky agreed that, given plaintiff's age and blood loss, a reasonably careful surgeon would have removed the spleen during plaintiff's second surgery.

¶ 13    Dr. Keith Gersin, a board-certified general surgeon specializing in bariatric surgery,

testified as a medical expert for the defense. He stated he reviewed various materials in the case, including medical records, depositions, and other materials, and he opined Dr. Breitman complied with the standard of care in his treatment of plaintiff. Dr. Gersin testified that decapsulation of the spleen was a "recognized complication" of the initial surgical procedures performed by Dr. Breitman. He disagreed with Dr. Chevinsky's opinion that Dr. Breitman should have converted from a laparoscopic procedure to an open procedure once he observed the areas of decapsulation. Dr. Gersin found no evidence in any of the materials he reviewed of any bleeding after Dr. Breitman treated the areas of decapsulation and testified "there would be no indication to convert to an open procedure when there was no longer any bleeding noted from the spleen." He stated the spleen is an organ that is full of blood and agreed that bleeding from the spleen is "easily observable."

¶ 14        Dr. Gersin further testified that open procedures were not without risk. He stated such a procedure "carries risks of infection, hernias, prolonged recovery, prolonged hospitalization, [and] increased pain." He found "no indication to convert to an open procedure" in the instant case. Additionally, Dr. Gersin testified that "visualization when done in an open manner is worse than when it's done in a laparoscopic manner." He stated that, laparoscopically, a surgeon has an angled camera and could "see the spleen very well." Dr. Gersin described observing the spleen during an open procedure as follows:

> "So when you make a large midline incision, [the spleen is] not just sitting there. You actually have to reach your hand sometimes up to your elbow, you have to reach your hand up here, up around the diaphragm, come around the spleen, and start taking down attachments to the spleen, and then deliver it, deliver that spleen, lift it up and deliver it so that you can see it."

¶ 15　　　　　Dr. Gersin noted the second surgery Dr. Breitman performed was "a laparotomy," or an "open procedure." He opined Dr. Breitman's decision to perform an "emergent" splenectomy during that surgery met the standard of care.

¶ 16　　　　　According to Dr. Gersin, Dr. Breitman observed no further bleeding "during the closure" at the end of the second surgical procedure. Based on his review of the operative note and Dr. Breitman's deposition testimony, Dr. Gersin opined "there was no bleeding at the time that [Dr. Breitman] was beginning to close [plaintiff's incision] for the second time." Ultimately, however, Dr. Breitman noticed blood in the drain, indicating bleeding. He reopened plaintiff's incision to identify the source of the bleeding, which was from the splenic artery. Dr. Gersin explained how additional bleeding could occur despite Dr. Breitman tying off the splenic artery and vessels during the second surgery, stating as follows:

> "[T]he splenic artery is like a tree, And as it approaches the spleen, it branches to multiple splenic arteries, if you will. And it's possible that when you put a clamp ***, that some of those branches could have retracted or spasmed down.
>
> That's—these are muscular vessels, and the body's response to having them cut is to retract or shorten and go into spasm so that they don't bleed anymore. That's the body's defense to help prevent bleeding.
>
> So it's certainly possible that a retraction or a spasm of the vessel occurred. And when Dr. Breitman finished the second operation and looked, there wasn't any bleeding because those vessels weren't bleeding because they were retracted or in spasm."

¶ 17　　　　　Dr. Gersin also described having low blood pressure as "another mechanism by which vessels don't bleed." He stated that, as a patient is resuscitated with volume and blood

products, vessels that were retracted or in spasm can begin to bleed. He opined that such circumstances could have been what happened to plaintiff in the present case.

¶ 18 Dr. Gersin disagreed with the suggestion that the bleeding complications plaintiff experienced as a result of his surgeries with Dr. Breitman were the reason he later suffered pulmonary embolisms and deep vein thrombosis. He maintained there were several risk factors for the development of such conditions and that both conditions could occur after any surgical procedure. Factors that increased plaintiff's likelihood of developing such conditions included his age, the fact that he was obese, his sedentary lifestyle, and that his initial operation took over 45 minutes or an hour. Dr. Gersin testified that neither bleeding nor a splenectomy was a factor that increased a person's risk of developing a pulmonary embolism or deep vein thrombosis.

¶ 19 Finally, Dr. Gersin testified that all of the bleeding complications plaintiff experienced on March 29, 2016, could happen in the absence of negligence. He testified postoperative bleeding was one of the risks associated with surgery and could happen "to all surgeons."

¶ 20 Following the presentation of evidence in the case, defendants moved for a directed verdict. The record shows the trial court partially granted the motion with respect to the issue of proximate cause and plaintiff's splenectomy, stating as follows: "I believe it's clear that Dr. Chevinsky says that [plaintiff] would have required a splenectomy in any event and, therefore, you don't have proximate cause with regards to the splenectomy." Relative to that finding, the jury was instructed as follows: "The court has determined that Plaintiff may not recover damages as a result of having his spleen removed. This is not an issue you will need to decide."

¶ 21 During closing arguments, plaintiff's counsel argued Dr. Breitman was negligent in failing to (1) convert from a laparoscopic procedure to an open surgical procedure at the time

of the first surgery and (2) properly control the bleeding from the splenic artery during the second surgery when plaintiff's spleen was removed. Counsel asked the jury to award plaintiff damages for loss of a normal life, pain and suffering including emotional distress, and medical bills totaling $13,803. Ultimately, the jury returned a verdict in favor of defendants. On December 6, 2022, the trial court entered judgment on the verdict.

¶ 22 On December 28, 2022, plaintiff filed a motion for a judgment notwithstanding the verdict (judgment *n.o.v.*) or, alternatively, a new trial and other relief. He argued the trial court erred by (1) barring him from introducing certain medical bills into evidence based on a lack of expert testimony regarding what bills were related to Dr. Breitman's alleged negligence; (2) barring him for introducing certain medical bills into evidence based on a lack of evidence showing that the bills were reasonable and customary for the medical services provided; (3) barring testimony from Dr. Chevinsky regarding his risk of future harm as a result of defendants' alleged negligence; (4) allowing Dr. Gersin to provide speculative and uncorroborated evidence and testimony regarding why Dr. Breitman did not detect, control, and stop his bleeding during surgery; (5) allowing Dr. Gersin to provide speculative and uncorroborated evidence and testimony regarding his development of blood clots; (6) allowing defendants to inquire into how he retained Dr. Chevinsky; (7) barring him from asserting emotional distress as a separate and distinct element of damages in the jury instructions and on verdict forms; and (8) limiting his use of the *res ipsa loquitur* doctrine. Plaintiff also argued that the court should enter an *additur* to properly reflect the full measure of his medical bills in the amount of $225,213.68, which resulted from Dr. Breitman's medical negligence. The record reflects defendants filed a response to plaintiff's motion and that plaintiff filed a reply to defendants' response. On August 25, 2023, the trial court entered an 11-page memorandum opinion and order, denying plaintiff's posttrial motion.

¶ 23    This appeal followed.

¶ 24                                    II. ANALYSIS

¶ 25    On appeal, plaintiff argues the trial court made several erroneous rulings that "overwhelmingly favored" defendants and prejudiced him in the eyes of the jury. In particular, he raises the same contentions of error as set forth in his posttrial motion for a judgment *n.o.v.* or, alternatively, a new trial and other relief, challenging the court's rulings regarding the admission of medical bills, the admissibility of expert testimony, defendants' ability to inquire into the retention of his medical expert, the content of jury instructions pertaining to emotional distress damages, and his use of the *res ipsa loquitur* doctrine. Like in his posttrial motion, plaintiff also argues he was entitled to an *additur* in the amount of his erroneously excluded medical bills. He seeks reversal of the court's denial of his posttrial motion, a remand for further proceedings, and "any other and further relief that this Court deems equitable and just."

¶ 26           A. Preliminary Considerations: Forfeiture and Standard of Review

¶ 27    In response to plaintiff's appeal, defendants initially contend the trial court's judgment may be affirmed on the basis that plaintiff forfeited his claims of error by filing a procedurally deficient posttrial motion. Specifically, they argue plaintiff's claims were not preserved for review because he "failed to indicate [in his posttrial motion] which form of relief he sought regarding each contention."

¶ 28    Section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202 (West 2022)) governs the filing of posttrial motions in jury cases, setting forth "strict rules" for such motions following trial. *Crim v. Dietrich*, 2020 IL 124318, ¶ 25, 164 N.E.3d 1205. It states as follows:

          "Relief desired after trial in jury cases *** must be sought in a single post-trial motion. *** The post-trial motion must contain the points relied upon, particularly

specifying the grounds in support thereof, and must state the relief desired, as for example, the entry of a judgment, the granting of a new trial or other appropriate relief. Relief sought in post-trial motions may be in the alternative or may be conditioned upon the denial of other relief asked in preference thereto, as for example, a new trial may be requested in the event a request for judgment is denied." 735 ILCS 5/2-1202(b) (West 2022).

The failure to file a posttrial motion after a jury trial "fail[s] to preserve any challenge to the jury's verdict for appellate review." *Crim*, 2020 IL 124318, ¶ 35. Additionally, "[a] party may not urge as error on review of the ruling on the party's post-trial motion any point, ground, or relief not specified in the motion." Ill. S. Ct. R. 366(b)(2)(iii) (eff. Feb. 1, 1994).

¶ 29 Our supreme court has held that the "specificity rule" for posttrial motions in jury cases serves three purposes. *Brown v. Decatur Memorial Hospital*, 83 Ill. 2d 344, 349, 415 N.E.2d 337, 339 (1980).

"First, it allows the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a new trial if, on reconsideration, he concludes that his earlier decision was incorrect. [Citations.] Second, by requiring the statement of the specific grounds urged as support for the claim of error, the rule allows a reviewing court to ascertain from the record whether the trial court has been afforded an adequate opportunity to reassess the allegedly erroneous rulings. Third, by requiring the litigants to state the specific grounds in support of their contentions, it prevents them from stating mere general objections and subsequently raising on appeal arguments which the trial judge was never given an opportunity to consider." *Id.* at 349-50.

The rule "has the salutary effect of promoting both the accuracy of decision making and the elimination of unnecessary appeals." *Id.* at 350.

¶ 30 Here, plaintiff filed a timely posttrial motion, raising the exact same claims he now raises on appeal. Although in his motion he did not identify the precise relief sought when addressing each of his specific contentions of error, his motion was titled as a motion for a judgment *n.o.v.* or, alternatively, a new trial, and he explicitly requested those alternative forms of relief in both the opening and concluding paragraphs of his motion. Moreover, the record reflects plaintiff's motion was sufficiently detailed, allowing the trial court an adequate opportunity to review and reassess its prior rulings. The purposes behind the posttrial motion specificity rule have been fully served, and we find no procedural deficiencies in plaintiff's posttrial motion that warrant a finding of forfeiture as to all issues raised.

¶ 31 Additionally, we note that, on appeal, plaintiff asserts the applicable standard of review for his claims is the standard for granting a judgment *n.o.v.* Although we decline to find forfeiture based upon defendants' claim of an allegedly deficient posttrial motion, we do find forfeiture to the extent plaintiff requests that particular form of relief.

¶ 32 "A motion for judgment *n.o.v.* should be granted only when all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors [a] movant that no contrary verdict based on that evidence could ever stand." (Internal quotation marks omitted.) *Lawlor v. North American Corp. of Illinois*, 2012 IL 112530, ¶ 37, 983 N.E.2d 414. As the trial court noted below, although plaintiff requested the entry of a judgment *n.o.v.* as an alternative form of relief, he failed to make any "argument or showing that the evidence so overwhelmingly favored him that no contrary verdict based on the evidence could ever stand." Plaintiff similarly makes no such argument or showing on appeal. Accordingly, to the extent that

plaintiff seeks relief in the form of a judgment *n.o.v.* on appeal, his request has been forfeited based on his failure to provide grounds for the granting of such relief.

¶ 33 In this instance, plaintiff's claims, both below and on appeal, contemplate relief in the form of a new trial. We note "[a] court's ruling on a motion for a new trial will not be reversed except in those instances where it is affirmatively shown that it clearly abused its discretion." *Maple v. Gustafson*, 151 Ill. 2d 445, 455, 603 N.E.2d 508, 513 (1992). "In determining whether the trial court abused its discretion, the reviewing court should consider whether the jury's verdict was supported by the evidence and *whether the losing party was denied a fair trial.*" (Emphasis added.) *Id.* Plaintiff in this case effectively seeks a new trial based on the ground that the trial court's erroneous rulings denied him a fair trial. The court determined plaintiff "failed to show that there was any error in [its] rulings that was substantially prejudicial and affected the outcome of the trial such that he [was] entitled to a new trial." On review, we consider whether the court abused its discretion in that determination.

¶ 34 B. Issues Pertaining to the Question of Damages

¶ 35 On appeal, plaintiff raises several claims of error that concern only the question of damages he suffered as a result of defendants' allegedly negligent conduct. Specifically, he contends the trial court erred by (1) barring him from introducing certain medical bills into evidence, (2) barring Dr. Chevinsky from testifying as to his risk of future harm from defendants' alleged negligence, and (3) refusing to allow jury instructions and verdict forms that contained emotional distress as a separate and distinct element of damages from pain and suffering. Plaintiff also claims that he is entitled to an *additur* in the amount of $225,213.68, a figure that represents the full amount of the medical bills he contends were improperly barred by the court.

¶ 36 "Generally, errors at trial relating solely to damages will not be considered on

appeal where it is evident that the jury, having found in favor of the defendant as to liability, never reached the question of damages." *McDonnell v. McPartlin*, 192 Ill. 2d 505, 531, 736 N.E.2d 1074, 1089 (2000); see *Mackey v. Daddio*, 139 Ill. App. 3d 604, 610, 487 N.E.2d 1167, 1171 (1985) ("[W]here a defendant is found not liable, alleged errors which pertain solely to the question of damages do not afford grounds for reversal."). An exception to the general rule exists only "where errors which go to the question of damages are so pervasive and prejudicial as to create the likelihood that they may have affected a jury's decision on the issue of liability." (Internal quotation marks omitted.) *McDonnell*, 192 Ill. 2d at 531.

¶ 37    In this case, the jury returned a verdict in defendants' favor on the question of liability and, thus, was not required to consider the question of damages. The above claims of error—regarding the admissibility of plaintiff's medical bills, testimony as to plaintiff's risk of future harm, and whether emotional distress is separate and distinct from pain and suffering—pertained solely to a potential award of damages and were irrelevant to the jury's determination of liability. Nevertheless, both before the trial court and on appeal, plaintiff has suggested that the court's rulings impacted the jury's decision on liability because they created a false impression that he sustained "no damages" as a result of Dr. Breitman's alleged malpractice. However, even assuming that error occurred, we find plaintiff has failed to show any error was so pervasive and prejudicial that it likely affected the jury's decision that defendants were not liable.

¶ 38    The record shows the jury was informed that the question of liability was separate from the question of damages. Specifically, jurors were instructed that, if they decided "for the defendants on the question of liability, [they would] have no occasion to consider the question of damages." Further, as noted by the trial court in rejecting plaintiff's arguments below, plaintiff did present evidence of damages at trial. He introduced approximately $13,000 of his medical bills

- 14 -

into evidence and was permitted to present testimony from Dr. Chevinsky that he faced a future risk of "overwhelming postsplenectomy infection." As plaintiff acknowledges on appeal, he also "extensively testified as to the emotional distress and mental anguish he suffered." The record shows that plaintiff was allowed to present both (1) evidence that he suffered emotional distress due to defendants' alleged negligence and (2) argument that the jury should award him damages related to that emotional distress.

¶ 39    Clearly, the jury had evidence before it of plaintiff's alleged damages. Under the circumstances presented, we flatly reject plaintiff's claim that the trial court's allegedly erroneous rulings on issues pertaining solely to damages impacted the jury's defense verdict, and we decline to further consider his challenge to the court's rulings.

¶ 40    Additionally, we note our agreement with the trial court's characterization of defendant's *additur* claim as "nonsensical." Motions for *additur* are used to contest the amount of damages awarded in a case, not to address issues pertaining to liability. *Allstate Insurance Co. v. Mahr*, 328 Ill. App. 3d 915, 916, 767 N.E.2d 494, 496 (2002). In certain circumstances, *additur* may be used as an alternative to granting a plaintiff a new trial when there has been an "omission of a liquidated or easily calculated item of damages." (Internal quotation marks omitted.) *Dobyns v. Chung*, 399 Ill. App. 3d 272, 286, 926 N.E.2d 847, 859 (2010).

¶ 41    Here, in rejecting plaintiff's request for an *additur*, the trial court stated as follows: "This was a defense verdict and thus there is no damage award to be added to. The jury did not award inadequate damages or omit an easily calculated item of damage, but rather found in favor of the defendants on liability. Quite obviously, *additur* has no application here." The court was correct in its ruling, and *additur* simply may not be applied under the facts presented.

¶ 42        C. Admission of Testimony From Dr. Gersin

¶ 43 Plaintiff next argues the trial court erred by allowing defendants' medical expert, Dr. Gersin, to provide speculative and uncorroborated testimony at trial. In particular, he challenges testimony from Dr. Gersin as to (1) the possible reasons Dr. Breitman failed to detect, control, or stop plaintiff's bleeding during the surgeries he performed and (2) plaintiff's risk factors for developing blood clots following his surgeries. Plaintiff maintains he was prejudiced by Dr. Gersin's challenged testimony.

¶ 44 Here, prior to trial, plaintiff filed a motion *in limine*, seeking to exclude "speculative opinion testimony" from Dr. Gersin, which he argued was not based on medical evidence and facts present in the case. Specifically, he sought to bar testimony from Dr. Gersin regarding (1) "the 'number of possibilities' " regarding why Dr. Breitman failed to detect or stop plaintiff's bleeding during surgery and (2) "various 'other' causes of" plaintiff's pulmonary embolisms and deep vein thrombosis. During a pretrial hearing in the matter, the trial court heard arguments from the parties and denied plaintiff's motion.

¶ 45 At trial, Dr. Gersin offered explanations as to why Dr. Breitman did not observe bleeding at the end of plaintiff's second surgery. He stated it was possible that no bleeding occurred due to the splenic arteries retracting or spasming down, which he described as "the body's defense to help prevent bleeding." He also stated plaintiff may not have been bleeding for a period of time due to being hypotensive, *i.e.*, having low blood pressure. At trial, Dr. Gersin further disagreed that plaintiff's pulmonary embolisms and deep vein thrombosis were caused by the bleeding complications he experienced during his surgeries. He testified plaintiff had other risk factors for the development of such conditions, including "his age, the fact that he was obese, that the initial operation took over 45 minutes to an hour, and the sedentary lifestyle."

¶ 46 On appeal, defendants argue that plaintiff has forfeited his contention of error with

respect to Dr. Gersin's testimony because he failed to raise contemporaneous objections to the challenged testimony. We agree.

¶ 47 "When the [trial] court makes its rulings before trial in response to the parties' motions *in limine*, the rulings are interlocutory and remain subject to reconsideration throughout trial." (Internal quotation marks omitted.) *Arkebauer v. Springfield Clinic*, 2021 IL App (4th) 190697, ¶ 60, 189 N.E.3d 510. As a result, "[t]he denial of a motion *in limine* does not in itself preserve an objection to disputed evidence that is introduced later at trial." *Simmons v. Garces*, 198 Ill. 2d 541, 569, 763 N.E.2d 720, 738 (2002). "When a motion *in limine* is denied, a contemporaneous objection to the evidence at the time it is offered is required to preserve the issue for review." (Internal quotation marks omitted.) *Id.*; see Ill. R. Evid. 103(b)(3) (eff. Oct. 15, 2015) ("In civil trials, even if the court rules before or at trial on the record concerning the admission of evidence, a contemporaneous trial objection or offer of proof must be made to preserve a claim of error for appeal."). "While there is not always a need to repeat the objection each time similar evidence is presented \*\*\*, one must nonetheless object the first time the evidence is introduced." *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502, 645 N.E.2d 896, 898 (1994).

¶ 48 In this instance, plaintiff did not object to Dr. Gersin's challenged testimony *at the time it was offered* at trial. In fact, the record shows no objections were raised at all by plaintiff during the entirety of Dr. Gersin's direct examination. On appeal, plaintiff contends he raised "a standing and continuing objection" to the evidence during pretrial proceedings. However, the record does not support his assertion, showing only that, after the trial court denied his motion *in limine*, plaintiff's counsel stated as follows: "Thank you, [Y]our Honor. And just for the record, I guess we'll put my objection on there just for purposes of the record. Thank you." At most, the

record shows counsel raised an objection to the court's ruling on plaintiff's motion *in limine*. It does not reflect the making of a standing or continuing objection to the challenged evidence, much less that the trial court recognized the objection as such. See *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 96, 976 N.E.2d 447 (stating that "[o]rdinarily, continuing objections are not recognized unless the trial court indicates its recognition of the continuing objection" (internal quotation marks omitted)).

¶ 49    Both in his reply brief and at oral argument, plaintiff maintained he also raised an objection to Dr. Gersin's allegedly speculative testimony at trial. He references a portion of the record where the trial court and the parties discussed the evidence deposition of another doctor. Specifically, plaintiff cites the following colloquy:

"MR. PAPOUTSIS [(PLAINTIFF'S ATTORNEY)]: Line 25 through 1. And do you take out No. 2 that he answered or do you leave that in?

MR. ORSI [(DEFENSE ATTORNEY)]: Well, the question is related to the spinal tenderness.

MR. PAPOUTSIS: Yes. Okay. Got it.

THE COURT: For the same reasons, I agree that it can be relevant to damages, to loss of a normal life.

MR. PAPOUTSIS: All right. That's my same objection.

MR. ORSI: Dr. Gersin is also disclosed to opine or [*sic*] prior conditions not related to the surgery.

THE COURT: So I think 25 and—25 on 8, 1 on 9, 7 and 8 on 9 and 9 then.

MR. PAPOUTSIS: And then, again, that's my same objection as to relevancy and causation.

THE COURT: Yeah. And I'll take out—I'm going to overrule that—19 and 20 and 21."

Although the cited exchange contains a reference to Dr. Gersin and objections by plaintiff's counsel, the record suggests plaintiff was actually objecting to testimony contained in the evidence deposition being discussed, not any specific testimony or opinions of Dr. Gersin. Notably, the grounds asserted for plaintiff's objection were "relevancy and causation," not speculation, *i.e.*, the basis of his challenge to Dr. Gersin's testimony on appeal. See *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 645, 685 N.E.2d 1, 8 (1996) (stating a "party must state specific grounds for any objections, and other grounds not stated are waived on review").

¶ 50          We find it well settled that, following the denial of a motion *in limine*, "a contemporaneous objection to the evidence at the time it is offered is *required* to preserve the issue for review." (Emphasis added and internal quotation marks omitted.) *Simmons*, 198 Ill. 2d at 569; see Ill. R. Evid. 103(b)(3) (eff. Oct. 15, 2015). Here, plaintiff raised no contemporaneous objection at trial to Dr. Gersin's testimony, and as a result, the challenges raised in his motion *in limine* have been forfeited.

¶ 51          Further, even if we were to set aside plaintiff's forfeiture, we would find no merit to his claims of error. "The admissibility of expert testimony is reviewed using an abuse of discretion standard." *Young v. Wilkinson*, 2022 IL App (4th) 220302, ¶ 58, 213 N.E.3d 486. "An abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id.*

¶ 52          Plaintiff challenges Dr. Gersin's opinion testimony on the basis that it was speculative and lacking in factual support because Dr. Gersin testified to only "possibilities" and what "might" or "could" have happened in plaintiff's case. However, "[t]o be probative on the

- 19 -

issue of causation, a medical expert is not required to give an opinion regarding a *specific* cause." (Emphasis in original.) *Hahn v. Union Pacific R.R. Co.*, 352 Ill. App. 3d 922, 930, 816 N.E.2d 834, 841 (2004). "Rather, a medical expert is permitted to testify to what might or could have caused an injury \*\*\*." *Id.*; see *Iaccino v. Anderson*, 406 Ill. App. 3d 397, 407, 940 N.E.2d 742, 751 (2010) (stating a medical expert may properly "testify to what might or could have caused an injury"). Further, the record shows Dr. Gersin based his testimony on his review of plaintiff's medical records and various depositions taken in the case. He relied on facts that included Dr. Breitman's observation of no bleeding during the surgery to remove plaintiff's spleen, as well as plaintiff's individual characteristics. He also relied on his medical training and experience, which included his own performance of the procedures undergone by plaintiff.

¶ 53　　　　　Additionally, as noted by the trial court, one basis for plaintiff's challenge to Dr. Gersin's testimony was that, according to medical records, a doctor who treated plaintiff for his pulmonary embolisms and deep vein thrombosis, Dr. Hugh McHugh, related those conditions to plaintiff's "recent surgery." The court rejected plaintiff's claim, finding both that (1) Dr. McHugh's statement did not necessarily establish causation and (2) the "argument border[ed] on frivolous" because presentation of one expert opinion as to causation does not mean that no other doctor can provide causation testimony. We agree with the court and find plaintiff's argument lacks merit.

¶ 54　　　　　Here, the record reflects no abuse of discretion by the trial court in denying plaintiff's motion to exclude Dr. Gersin's testimony. Under the circumstances presented, not only did plaintiff forfeit his challenges to Dr. Gersin's testimony by failing to properly object, but his claims also have no merit.

¶ 55　　　　　　　　　D. Inquiry Into Plaintiff's Retention of Dr. Chevinsky

¶ 56 On appeal, plaintiff further argues the trial court improperly allowed defendants "to inquire [into] how and from where [he] secured and retained" Dr. Chevinsky. He suggests such an inquiry elicited highly prejudicial testimony that Dr. Chevinsky was retained through an agency called the Technical Advisory Service for Attorneys (TASA). According to plaintiff, the testimony created the impression that Dr. Chevinsky "was a 'hired gun' that always sides with plaintiff[s] regardless of the facts."

¶ 57 The record shows that, prior to trial, plaintiff filed a motion *in limine* seeking to bar testimony that Dr. Chevinsky was retained through TASA. Similar to his contentions on appeal, he argued such evidence was "especially prejudicial" and "would create the impression in the minds of the jury that TASA only provides expert medical doctors that go against Defendant medical doctors sued in medical malpractice cases." The trial court denied the motion.

¶ 58 Again, "[t]he denial of a motion *in limine* does not in itself preserve an objection to disputed evidence that is introduced later at trial." *Simmons*, 198 Ill. 2d at 569. Rather, to avoid forfeiture, the moving party must make a contemporaneous objection at the time the evidence is offered. *Id.* "[O]ne must *** object the first time the evidence is introduced." *Illinois State Toll Highway Authority*, 163 Ill. 2d at 502. Moreover, where a party elects to introduce the challenged evidence himself, he cannot complain on appeal "that the trial court erred in admitting the evidence." *Simmons*, 198 Ill. 2d at 569.

¶ 59 Here, it was plaintiff who introduced evidence at trial that Dr. Chevinsky was retained through TASA. Specifically, on direct examination of Dr. Chevinsky by plaintiff's counsel, the following colloquy occurred:

"Q. Okay. And you were contacted by our office through an agency called TASA; is that correct?

A. That's correct.

Q. And TASA is a technical advisory service for attorneys, correct?

A. That's correct.

Q. And when you testify in cases such of this nature, are you testifying and your services are provided by yourself, correct?

A. That's correct.

Q. All right. Do you pay any money to TASA for them referring you to other attorneys who might need services in this type of case?

A. No."

Accordingly, because plaintiff elected to introduce evidence that Dr. Chevinsky was retained through TASA during his own case-in-chief, he cannot complain on appeal that the trial court erred in denying his motion to bar such evidence. Under the circumstances, the issue has been waived, and we decline to consider it further.

¶ 60                                   E. *Res Ipsa Loquitur*

¶ 61          On appeal, plaintiff also argues the trial court erred in limiting his use of the *res ipsa loquitur* doctrine to only Dr. Breitman's alleged failure to control and stop the bleeding from his splenic artery at the time of the second surgery. He contends the doctrine should have further been applied to Dr. Breitman's alleged negligence during the first surgery based on Dr. Chevinsky's testimony that Dr. Breitman was negligent in failing to convert to an open procedure to find and control plaintiff's bleeding and avoid "all subsequent surgeries and complications." Plaintiff asserts it was Dr. Chevinsky's opinion that "bleeding would not have occurred if Dr. Breitman had converted from a laparoscopic surgery to an open surgical procedure." He also asserts that the "injury to his spleen and area around and behind the spleen can only arise through

negligence" and, but for Dr. Breitman's negligence, he "would not have suffered injury to his spleen/spleen area."

¶ 62        The doctrine of *res ipsa loquitur* permits a factfinder "to infer negligence from a set of facts that 'speaks for itself.' " *Johnson v. Armstrong*, 2022 IL 127942, ¶ 34, 211 N.E.3d 355.

> " 'When a thing which caused the injury is shown to be under the control or management of the party charged with negligence and the occurrence is such as in the ordinary course of things would not have happened if the person so charged had used proper care, the accident itself affords reasonable evidence, in the absence of an explanation by the party charged, that it arose from want of proper care. [Citations.] This in essence is the doctrine of *res ipsa loquitur*, and its purpose is to allow proof of negligence by circumstantial evidence when the direct evidence concerning cause of injury is primarily within the knowledge and control of the defendant.' " *Id.* ¶ 33 (quoting *Metz v. Central Illinois Electric & Gas Co.*, 32 Ill. 2d 446, 448-49, 207 N.E.2d 305, 307 (1965)).

¶ 63        "For *res ipsa loquitur* to apply, the plaintiff must plead and prove that he was injured (1) in an occurrence that ordinarily does not happen in the absence of negligence (the probability element) (2) by an agency or instrumentality within the defendant's exclusive control (the control element)." *Id.* ¶ 35. "Whether *res ipsa loquitur* applies is a question of law to be decided in the first instance by the trial court." *Id.* " 'In making that determination, the court shall rely upon either the common knowledge of laymen, *** or upon expert medical testimony, that the medical result complained of would not have ordinarily occurred in the absence of negligence on the part of the defendant.' " *Id.* (quoting 735 ILCS 5/2-1113 (West 2020)). Expert testimony is required when the matters at issue are "outside the common knowledge of laymen." *Id.* ¶ 38.

¶ 64 Here, the record shows that, prior to trial, defendants filed a motion *in limine* to bar plaintiff from relying on or instructing the jury at trial regarding the doctrine of *res ipsa loquitur*. They (1) noted plaintiff did not plead *res ipsa loquitur* in his complaint and (2) asserted that there was no expert testimony to establish that the doctrine was applicable. As to their latter claim, defendants argued plaintiff's sole expert witness, Dr. Chevinsky, did not provide an opinion establishing "that any alleged injury does not occur unless there is negligence." They asserted that, instead, Dr. Chevinsky "confirmed at his deposition that you can indeed experience a bleeding complication in procedures like those at issue here, even when complying with the standard of care." At a pretrial hearing, the trial court granted defendants' motion.

¶ 65 Later, following the presentation of evidence at trial, plaintiff asked the trial court to reconsider its ruling. Ultimately, the court granted plaintiff's motion, in part, determining *res ipsa loquitur* was applicable to the "handling of the splenic artery in the second surgery." It based its determination on Dr. Chevinsky's trial testimony that plaintiff's need for a third surgery indicated to him that plaintiff's splenic artery "wasn't handled properly" at the time of the second surgery "and led to bleeding." However, the court rejected plaintiff's contention that *res ipsa loquitur* applied to the negligence he alleged in connection with his first surgery. In particular, it found that no testimony had been presented "that a bleed doesn't happen absent negligence" or that the injury to plaintiff's spleen was caused by negligence.

¶ 66 We find no error in the trial court's ruling. Plaintiff argues *res ipsa loquitur* was applicable to the negligence he alleged in connection with his first surgical procedure based on testimony from Dr. Chevinsky that Dr. Breitman breached the applicable standard of care in failing to convert to an open procedure to find and control his bleeding. Although such testimony is sufficient to support a negligence claim in a medical malpractice case, it does not support

- 24 -

application of *res ipsa loquitur*. In particular, plaintiff fails to point to any testimony from his medical expert " 'that the medical result complained of would not have ordinarily occurred in the absence of negligence on the part of the defendant.' " *Id.* ¶ 35 (quoting 735 ILCS 5/2-1113 (West 2020)).

¶ 67     Plaintiff appears to suggest that Dr. Chevinsky's testimony showed that his bleeding complications during and after the first surgery, the injury to his spleen, and his need for subsequent surgeries would ordinarily not have occurred in the absence of Dr. Breitman's negligence. However, Dr. Chevinsky offered no such testimony. He did not even offer opinions that Dr. Breitman was negligent in causing an injury to plaintiff's spleen or the bleeding complications plaintiff suffered during and after the first surgery. Dr. Chevinsky also testified that, had Dr. Breitman followed the standard of care, he would have converted to an open procedure, essentially performing plaintiff's second surgery, a splenectomy, during the first surgery.

¶ 68     Contrary to plaintiff's assertions on appeal, no testimony or evidence in the case established that the injury to his spleen and the bleeding he experienced during and immediately following the first surgery ordinarily does not happen in the absence of negligence. As a result, he did not establish both necessary elements for application of the *res ipsa loquitur* doctrine with respect to his claim of negligence during his first surgery. Under the circumstances presented, we find no error by the trial court in limiting plaintiff's use of *res ipsa loquitur* to his allegation of negligence stemming from only his second surgery.

¶ 69                          III. CONCLUSION

¶ 70     For the reasons stated, we affirm the trial court's judgment.

¶ 71     Affirmed.

*Rowsey v. Breitman*, 2024 IL App (4th) 230742

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 17-L-319; the Hon. Lisa Renae Fabiano, Judge, presiding. |
| **Attorneys for Appellant:** | Gus P. Apostolopoulos, of Lucas, Apostolopoulos & Valenti, Ltd., and Peter A. Papoutsis, both of Addison, for appellant. |
| **Attorneys for Appellee:** | Christopher J. Drinkwine, of Heyl, Royster, Voelker & Allen, P.C., of Rockford, for appellees. |