2026 IL App (1st) 250431-U

FIRST DISTRICT
SECOND DIVISION
April 14, 2026

No. 1-25-0431

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ANTUAN WINSLEY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois |
| Petitioner-Appellee, | ) | |
| | ) | |
| vs. | ) | No. 2024 OP 077184 |
| | ) | |
| SHAMECKA MARSHALL, | ) | Hon. Marina Ammendola, |
| | ) | Judge Presiding |
| Respondent-Appellant. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

## ORDER

¶ 1     *Held*: Affirmed. Respondent did not demonstrate that publication of audio recording was error or, even if error, that it was sufficiently prejudicial to warrant reversal.

¶ 2     Respondent Shamecka Marshall appeals an order of protection entered against her and in favor of petitioner Antuan Winsley. Shamecka claims the trial court erred in publishing an audio recording of her speaking with Antuan by phone, as the recording was made without her consent in violation of state law. Unfortunately, the record does not establish a violation of state law, Shamecka did not object to the publication of the recording, and Shamecka has not shown that any error was sufficiently prejudicial to overturn the judgment. We affirm.

¶ 3     Antuan did not file a brief, so we took this case on appellant's brief only. But Shamecka's brief is deficient in several respects. Illinois Supreme Court Rule 341(h)(6) (eff. July 1, 2008)

requires a statement of facts that contains the facts "necessary to an understanding of the case." Her brief contains a statement of facts but not one nearly sufficient to explain the case as a whole. More problematic is the lack of any citation to the record in violation of Rule 341(h)(6) and (h)(7). We have often noted that " 'it is not our duty to search the record for material upon which to base a reversal.' " *Vance v. Joyner*, 2019 IL App (4th) 190136, ¶ 80 (quoting *Farwell Construction Co. v. Ticktin*, 84 Ill. App. 3d 791, 802 (1980)).

¶ 4      The supreme court rules governing briefs are "not mere suggestions." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 7. And they apply to *pro se* litigants as equally as lawyers. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78 ("A *pro se* litigant *** is not entitled to more lenient treatment than attorneys.").

¶ 5      Finally, we are missing the exhibits from the record, including the audio recording at the center of the appeal and multiple emails between the parties that were tendered by each side. The burden is on the appellant, Shamecka, to provide a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubt arising from the incompleteness will be resolved against the appellant and in favor of the judgment. *Id.* at 392.

¶ 6      Without any assistance from Shamecka, we briefly summarize the background. Antuan and Shamecka were romantically involved from roughly September 2022 to July 2023. In approximately September 2023, Antuan became involved with another woman, Lolita Russell, with whom he now lives. Antuan testified that from the time he became involved with Ms. Russell, he told Shamecka that he was no longer interested in a romantic relationship with her. But Shamecka "seemed to not [] get the picture" and continued to "put herself in [] situations that we still [*sic*] together or interact."

¶ 7      He blocked her on his phone, but she started using email to communicate. She repeatedly

called Ms. Russell's phone as well. Shamecka also began communicating with Antuan's mother more often—in Antuan's eyes, "to stir up a lot of still—keep a lot of stuff stirred."

¶ 8    In one incident, Shamecka approached Antuan at work. Antuan told her that she needed to stop calling him. She showed him her handgun and told him she had just obtained a concealed-carry license.

¶ 9    More than once, Shamecka threatened to slash Antuan's car tires if he did not speak with her. One such incident occurred on May 9, when she tried to approach him at work. After he refused to come out, she emailed him, threatening to slash his car tires in the parking lot if he did not come out. The court read this email, among many others, though they are not in the record.

¶ 10    At some point around this time, Ms. Russell obtained a no-stalking, no-contact order against Shamecka. That order is not in the record. It appears from the testimony and the record that Ms. Russell's order initially included Antuan's workplace as a location from which Shamecka was barred, but the order was modified in July 2024 to exclude Antuan's workplace from the order. (We do not know why; we surmise that it was beyond the scope of a proper order, as the petitioner was Ms. Russell, and she could not bar Shamecka from a place of employment that was not hers.)

¶ 11    Within a day or two after the order was modified to exclude Antuan's workplace from Ms. Russell's no-contact order, Shamecka came to Antuan's workplace again. She acted in a violent manner toward him and struck him. As he put it, Shamecka "came in rage and she was trying to fight. I was asking her to leave. She tried to jump on my car, you know, trying to tussle with me a little bit. And so I was telling her, you know, go on get away from my job. *** You know, she trying [*sic*] to make a scene." Antuan recorded their conversation that day on his phone and played the audio in court. That audio recording is not in the record, nor is a transcript.

3

¶ 12    Antuan called the police and filed a police report that day. The police told him that he needed his own order of protection if he did not want Shamecka to visit his place of business.

¶ 13    Antuan testified that he did not necessarily feel that his life was being threatened, though "now[a]days you can't take a chance." He was quite concerned that Shamecka's visits to his office could impact his job, and he generally wanted Shamecka to "leave us alone."

¶ 14    Shamecka did not object to the playing of the audio recording in court. She did not testify that she was unaware that he was recording their conversation, nor did she testify that she did not consent to the recording. She said nothing, one way or the other, on the topic.

¶ 15    She did, however, admit to making many of the threats that were captured on the audio recording. Specifically, she admitted to (1) threatening to physically harm Ms. Russell "multiple times," including "to give her two shots to the mouth;" (2) threatening to go to Ms. Russell's workplace; (3) threatening to physically harm Antuan or "beat his ass;" and (4) threatening to keep coming to Antuan's workplace. Shamecka's principal defense was that Antuan had continued email communications with her, at least to some limited extent, up through May 2024. Those emails were tendered to the court but are not included in the record.

¶ 16    The court granted Antuan's petition, which barred Shamecka from Antuan's home or workplace and barred any further communication between them. The court noted that Antuan was not candid with when, exactly, his communications (or even his intimate relationship) with Shamecka ended. Still, the court found sufficient evidence to grant the petition. The court cited

> "[Shamecka]'s admissions that she *** was contacting [Antuan] unwanted and knew he was with someone else and knew that he had asked her not to come to his work. Again, there are threats to damage his vehicle, threats to him, threats to the new person in [Antuan]'s life. It is your admissions that prove [Antuan]'s case. And the Court cannot

4

disregard those."

¶ 17     Shamecka's argument on appeal centers around the audio recording. She claims the court erred in allowing it into evidence, as she did not consent to the recording and it was thus illegally obtained under state law. She also argues that she was not given sufficient time to prepare for this recording, which she received two weeks before trial. Finally, she claims that the audio recording may have been altered.

¶ 18     Shamecka is correct that state law prohibits the recording of a conversation with someone without that individual's consent. 720 ILCS 5/14-2(a)(2) (West 2022). But she did not establish at trial that she did not consent to the recording. She tells us *on appeal* that she did not consent, but we are confined to the record from the trial court. Parties are generally not allowed to testify or otherwise provide new information for the first time on appeal. *Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1, 14 (2009); *832 Oakdale Condo. Ass'n v. McBride*, 2025 IL App (1st) 240834-U, ¶ 31. We are not suggesting that Shamecka is being untruthful with us on appeal; our point is that we can rely only a certified trial record for information. From the record before us, Shamecka has not even established a violation of state law.

¶ 19     Nor did Shamecka object to the publication of this audio recording. A party must make a contemporaneous objection to preserve an evidentiary argument on appeal from a bench trial. *Illinois State Toll Highway Authority v. Heritage Standard Bank & Trust Co.*, 163 Ill. 2d 498, 502 (1994); *Rowsey v. Breitman*, 2024 IL App (4th) 230742, ¶ 47; Ill. R. Evid. 103(b)(3) (eff. Oct. 15, 2015) ("In civil trials, *** a contemporaneous trial objection or offer of proof must be made to preserve a claim of error for appeal.").

¶ 20     Shamecka claims that she did not have sufficient time to prepare a defense, as she

received a copy of the audio recording only two weeks before the hearing. But again, she did not ask for additional time to prepare or otherwise object to lack of notice. The reason objections are necessary is that it gives the court the chance to cure any problem. *People v. McLaurin*, 235 Ill. 2d 478, 488 (2009); *Walsh v. Sklar*, 2025 IL App (1st) 231830, ¶ 58. Here, for example, had Shamecka asked the court for additional time, the court might have granted it. We cannot allow a party to complain about matters that she did not bring to the trial court's attention in the first instance.

¶ 21    Though we have said enough, we would add that the court heard sufficient evidence independent of the audio recording to support its judgment. That recording pertained to but one of several instances of harassment detailed in the trial. Shamecka has not even tried to argue otherwise. Indeed, she has not provided any discussion of the facts of this case whatsoever, aside from the publication of the audio recording; what we have provided above came from our own review of the transcript.

¶ 22    We understand that Shamecka is *pro se*, but we must confine our review to the arguments and points made in the appellant's brief; we cannot construct arguments that she, herself, did not advance. That would convert our role from dispassionate arbiter to an advocate for one side. See *Tuna v. Wisner*, 2023 IL App (1st) 211327, ¶ 56.

¶ 23    We have been provided no basis to overturn the judgment below. We thus affirm it.

¶ 24    Affirmed.